# OHIO *v.* AKRON CENTER FOR REPRODUCTIVE HEALTH ET AL.

No. 88–805.   Argued November 29, 1989—Decided June 25, 1990

504

KENNEDY, J., announced the judgment of the Court, and delivered the opinion of the Court with respect to Parts I, II, III, and IV, in which REHNQUIST, C. J., and WHITE, STEVENS, O'CONNOR, and SCALIA, JJ., joined, and an opinion with respect to Part V, in which REHNQUIST, C. J., and WHITE and SCALIA, JJ., joined. SCALIA, J., filed a concurring opinion, *post*, p. 520. STEVENS, J., filed an opinion concurring in part and concurring in the judgment, *post*, p. 521. BLACKMUN, J., filed a dissenting opinion, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 524.

*Rita S. Eppler*, Assistant Attorney General of Ohio, argued the cause for appellant. With her on the briefs were *Anthony J. Celebrezze, Jr.*, Attorney General, and *Thomas J. O'Connell* and *Suzanne E. Mohr*, Assistant Attorneys General.

*Linda R. Sogg* argued the cause for appellees. With her on the brief were *Dara Klassel, Roger Evans, Barbara E. Otten,* and *Eve W. Paul.**

JUSTICE KENNEDY announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II, III, and IV,† and an opinion with respect to Part V, in which THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE SCALIA join.

The Court of Appeals held invalid an Ohio statute that, with certain exceptions, prohibits any person from performing an abortion on an unmarried, unemancipated, minor woman absent notice to one of the woman's parents or a court order of approval. We reverse, for we determine that the statute accords with our precedents on parental notice and

---

*Briefs of *amici curiae* urging reversal were filed for American Family Association, Inc., by *Peggy M. Coleman;* for the Association of American Physicians and Surgeons by *Ann-Louise Lohr, Paige Comstock Cunningham,* and *Kent Masterson Brown;* for Concerned Women for America by *Jordan W. Lorence, Cimron Campbell,* and *Wendell R. Bird;* for the Knights of Columbus by *Brendan V. Sullivan, Jr., Kevin J. Hasson,* and *Carl A. Anderson;* for the United States Catholic Conference by *Mark E. Chopko;* and for Representative Jerome S. Luebbers et al. by *Patrick J. Perotti.*

Briefs of *amici curiae* urging affirmance were filed for 274 Organizations in Support of *Roe* v. *Wade* by *Kathleen M. Sullivan, Susan R. Estrich, Barbara Jordan,* and *Estelle H. Rogers;* for the American College of Obstetricians and Gynecologists et al. by *Carter G. Phillips, Elizabeth H. Esty, Ann E. Allen, Stephan E. Lawton, Laurie R. Rockett,* and *Joel I. Klein;* and for the American Psychological Association et al. by *Donald N. Bersoff.*

Briefs of *amici curiae* were filed for the American Indian Health Care Association et al. by *Rhonda Copelon* and *Nadine Taub;* for Focus on the Family et al. by *H. Robert Showers;* for Save America's Youth, Inc., by *Lynn D. Wardle;* and for 13 Individual Members of the Panel on Adolescent Pregnancy and Childbearing or the Committee on Child Development Research and Public Policy by *Hannah E. M. Lieberman* and *Pamela H. Anderson.*

†JUSTICE STEVENS and JUSTICE O'CONNOR join only Parts I, II, III, and IV of the opinion.

consent in the abortion context and does not violate the Fourteenth Amendment.

I

A

The Ohio Legislature, in November 1985, enacted Amended Substitute House Bill 319 (H. B. 319), which amended Ohio Rev. Code Ann. § 2919.12 (1987), and created Ohio Rev. Code Ann. §§ 2151.85 and 2505.073 (Supp. 1988). Section 2919.12(B), the cornerstone of this legislation, makes it a criminal offense, except in four specified circumstances, for a physician or other person to perform an abortion on an unmarried and unemancipated woman under 18 years of age. See § 2919.12(D) (making the first offense a misdemeanor and subsequent offenses felonies); § 2919.12(E) (imposing civil liability).

The first and second circumstances in which a physician may perform an abortion relate to parental notice and consent. First, a physician may perform an abortion if he provides "at least twenty-four hours actual notice, in person or by telephone," to one of the woman's parents (or her guardian or custodian) of his intention to perform the abortion. § 2919.12(B)(1)(a)(i). The physician, as an alternative, may notify a minor's adult brother, sister, stepparent, or grandparent, if the minor and the other relative each file an affidavit in the juvenile court stating that the minor fears physical, sexual, or severe emotional abuse from one of her parents. See §§ 2919.12(B)(1)(a)(i), 2919.12(B)(1)(b), 2919.12(B)(1)(c). If the physician cannot give the notice "after a reasonable effort," he may perform the abortion after "at least forty-eight hours constructive notice" by both ordinary and certified mail. § 2919.12(B)(2). Second, a physician may perform an abortion on the minor if one of her parents (or her guardian or custodian) has consented to the abortion in writing. See § 2919.12(B)(1)(a)(ii).

The third and fourth circumstances depend on a judicial procedure that allows a minor to bypass the notice and con-

sent provisions just described. The statute allows a physician to perform an abortion without notifying one of the minor's parents or receiving the parent's consent if a juvenile court issues an order authorizing the minor to consent, § 2919.12(B)(1)(a)(iii), or if a juvenile court or court of appeals, by its inaction, provides constructive authorization for the minor to consent, § 2919.12(B)(1)(a)(iv).

The bypass procedure requires the minor to file a complaint in the juvenile court, stating (1) that she is pregnant; (2) that she is unmarried, under 18 years of age, and unemancipated; (3) that she desires to have an abortion without notifying one of her parents; (4) that she has sufficient maturity and information to make an intelligent decision whether to have an abortion without such notice, *or* that one of her parents has engaged in a pattern of physical, sexual, or emotional abuse against her, *or* that notice is not in her best interests; and (5) that she has or has not retained an attorney. §§ 2151.85(A)(1)–(5). The Ohio Supreme Court, as discussed below, has prescribed pleading forms for the minor to use. See App. 6–14.

The juvenile court must hold a hearing at the earliest possible time, but not later than the fifth business day after the minor files the complaint. § 2151.85(B)(1). The court must render its decision immediately after the conclusion of the hearing. *Ibid.* Failure to hold the hearing within this time results in constructive authorization for the minor to consent to the abortion. *Ibid.* At the hearing the court must appoint a guardian ad litem and an attorney to represent the minor if she has not retained her own counsel. § 2151.85(B)(2). The minor must prove her allegation of maturity, pattern of abuse, or best interests by clear and convincing evidence, § 2151.85(C), and the juvenile court must conduct the hearing to preserve the anonymity of the complainant, keeping all papers confidential. §§ 2151.85(D), (F).

The minor has the right to expedited review. The statute provides that, within four days after the minor files a

notice of appeal, the clerk of the juvenile court shall deliver
the notice of appeal and record to the state court of appeals.
§ 2505.073(A). The clerk of the court of appeals dockets the
appeal upon receipt of these items. *Ibid.* The minor must
file her brief within four days after the docketing. *Ibid.* If
she desires an oral argument, the court of appeals must hold
one within five days after the docketing and must issue a
decision immediately after oral argument. *Ibid.* If she
waives the right to an oral argument, the court of appeals
must issue a decision within five days after the docketing.
*Ibid.* If the court of appeals does not comply with these time
limits, a constructive order results authorizing the minor to
consent to the abortion. *Ibid.*

## B

Appellees in this action include the Akron Center for Re-
productive Health, a facility that provides abortions; Max
Pierre Gaujean, M. D., a physician who performs abortions
at the Akron Center; and Rachael Roe, an unmarried, un-
emancipated, minor woman, who sought an abortion at the
facility. In March 1986, days before the effective date of
H. B. 319, appellees and others brought a facial challenge to
the constitutionality of the statute in the United States Dis-
trict Court for the Northern District of Ohio. The District
Court, after various proceedings, issued a preliminary in-
junction and later a permanent injunction preventing the
State of Ohio from enforcing the statute. *Akron Center for
Reproductive Health* v. *Rosen,* 633 F. Supp. 1123 (1986).

The Court of Appeals for the Sixth Circuit affirmed, con-
cluding that H. B. 319 had six constitutional defects. These
points, discussed below, related to the sufficiency of the ex-
pedited procedures, the guarantee of anonymity, the con-
structive authorization provisions, the clear and convincing
evidence standard, the pleading requirements, and the physi-
cian's personal obligation to give notice to one of the minor's

parents. *Akron Center for Reproductive Health* v. *Slaby*, 854 F. 2d 852 (1988). The State of Ohio, on appeal under 28 U. S. C. § 1254(2) (1982 ed.), prob. juris. noted, 492 U. S. 916 (1989), challenges the Court of Appeals' decision in its entirety. Appellees seek affirmance on the grounds adopted by the Court of Appeals and on other grounds.

## II

We have decided five cases addressing the constitutionality of parental notice or parental consent statutes in the abortion context. See *Planned Parenthood of Central Mo.* v. *Danforth*, 428 U. S. 52 (1976); *Bellotti* v. *Baird*, 443 U. S. 622 (1979); *H. L.* v. *Matheson*, 450 U. S. 398 (1981); *Planned Parenthood Assn. of Kansas City, Mo., Inc.* v. *Ashcroft*, 462 U. S. 476 (1983); *Akron* v. *Akron Center for Reproductive Health, Inc.*, 462 U. S. 416 (1983). We do not need to determine whether a statute that does not accord with these cases would violate the Constitution, for we conclude that H. B. 319 is consistent with them.

## A

This dispute turns, to a large extent, on the adequacy of H. B. 319's judicial bypass procedure. In analyzing this aspect of the dispute, we note that, although our cases have required bypass procedures for parental consent statutes, we have not decided whether parental notice statutes must contain such procedures. See *Matheson, supra,* at 413, and n. 25 (upholding a notice statute without a bypass procedure as applied to immature, dependent minors). We leave the question open, because, whether or not the Fourteenth Amendment requires notice statutes to contain bypass procedures, H. B. 319's bypass procedure meets the requirements identified for parental consent statutes in *Danforth, Bellotti, Ashcroft,* and *Akron. Danforth* established that, in order to prevent another person from having an absolute veto power over a minor's decision to have an abortion, a State must provide some sort of bypass procedure if it elects to require pa-

rental consent. See 428 U. S., at 74. As we hold today in *Hodgson* v. *Minnesota, ante,* p. 417, it is a corollary to the greater intrusiveness of consent statutes that a bypass procedure that will suffice for a consent statute will suffice also for a notice statute. See also *Matheson, supra,* at 411, n. 17 (notice statutes are not equivalent to consent statutes because they do not give anyone a veto power of over a minor's abortion decision).

The principal opinion in *Bellotti* stated four criteria that a bypass procedure in a consent statute must satisfy. Appellees contend that the bypass procedure does not satisfy these criteria. We disagree. First, the *Bellotti* principal opinion indicated that the procedure must allow the minor to show that she possesses the maturity and information to make her abortion decision, in consultation with her physician, without regard to her parents' wishes. See 443 U. S., at 643 (opinion of Powell, J.). The Court reaffirmed this requirement in *Akron* by holding that a State cannot presume the immaturity of girls under the age of 15. 462 U. S., at 440. In the case now before us, we have no difficulty concluding that H. B. 319 allows a minor to show maturity in conformity with the principal opinion in *Bellotti.* The statute permits the minor to show that she "is sufficiently mature and well enough informed to decide intelligently whether to have an abortion." Ohio Rev. Code Ann. § 2151.85(C)(1) (Supp. 1988).

Second, the *Bellotti* principal opinion indicated that the procedure must allow the minor to show that, even if she cannot make the abortion decision by herself, "the desired abortion would be in her best interests." 443 U. S., at 644. We believe that H. B. 319 satisfies the *Bellotti* language as quoted. The statute requires the juvenile court to authorize the minor's consent where the court determines that the abortion is in the minor's best interest and in cases where the minor has shown a pattern of physical, sexual, or emotional abuse. See § 2151.85(C)(2).

Third, the *Bellotti* principal opinion indicated that the procedure must insure the minor's anonymity. See 443 U. S., at 644. H. B. 319 satisfies this standard. Section 2151.85 (D) provides that "[t]he [juvenile] court shall not notify the parents, guardian, or custodian of the complainant that she is pregnant or that she wants to have an abortion." Section 2151.85(F) further states:

> "Each hearing under this section shall be conducted in a manner that will preserve the anonymity of the complainant. The complaint and all other papers and records that pertain to an action commenced under this section shall be kept confidential and are not public records."

Section 2505.073(B), in a similar fashion, requires the court of appeals to preserve the minor's anonymity and confidentiality of all papers on appeal. The State, in addition, makes it a criminal offense for an employee to disclose documents not designated as public records. See §§ 102.03(B), 102.99(B).

Appellees argue that the complaint forms prescribed by the Ohio Supreme Court will require the minor to disclose her identity. Unless the minor has counsel, she must sign a complaint form to initiate the bypass procedure and, even if she has counsel, she must supply the name of one of her parents at four different places. See App. 6–14 (pleading forms). Appellees would prefer protections similar to those included in the statutes that we reviewed in *Bellotti* and *Ashcroft*. The statute in *Bellotti* protected anonymity by permitting use of a pseudonym, see *Planned Parenthood League of Massachusetts* v. *Bellotti*, 641 F. 2d 1006, 1025 (CA1 1981), and the statute in *Ashcroft* allowed the minor to sign the petition with her initials, see 462 U. S., at 491, n. 16. Appellees also maintain that the Ohio laws requiring court employees not to disclose public documents are irrelevant because the right to anonymity is broader than the right not to have officials reveal one's identity to the public at large.

Confidentiality differs from anonymity, but we do not believe that the distinction has constitutional significance in the present context. The distinction has not played a part in our previous decisions, and, even if the *Bellotti* principal opinion is taken as setting the standard, we do not find complete anonymity critical. H. B. 319, like the statutes in *Bellotti* and *Ashcroft*, takes reasonable steps to prevent the public from learning of the minor's identity. We refuse to base a decision on the facial validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees. H. B. 319, like many sophisticated judicial procedures, requires participants to provide identifying information for administrative purposes, not for public disclosure.

Fourth, the *Bellotti* principal opinion indicated that courts must conduct a bypass procedure with expedition to allow the minor an effective opportunity to obtain the abortion. See 443 U. S., at 644. H. B. 319, as noted above, requires the trial court to make its decision within five "business day[s]" after the minor files her complaint, § 2151.85(B)(1); requires the court of appeals to docket an appeal within four "days" after the minor files a notice of appeal, § 2505.073(A); and requires the court of appeals to render a decision within five "days" after docketing the appeal, *ibid.*

The District Court and the Court of Appeals assumed that all of the references to days in §§ 2151.85(B)(1) and 2505.073(A) meant business days as opposed to calendar days. Cf. Ohio Rule App. Proc. 14(A) (excluding nonbusiness days from computations of less than seven days). They calculated, as a result, that the procedure could take up to 22 calendar days because the minor could file at a time during the year in which the 14 business days needed for the bypass procedure would encompass 3 Saturdays, 3 Sundays, and 2 legal holidays. Appellees maintain, on the basis of an affidavit included in the record, that a 3-week delay could increase by a substantial measure both the costs and the medical risks of an abortion. See App. 18. They conclude, as did those

courts, that H. B. 319 does not satisfy the *Bellotti* principal opinion's expedition requirement.

As a preliminary matter, the 22-day calculation conflicts with two well-known rules of construction discussed in our abortion cases and elsewhere. "Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." *Ashcroft*, 462 U. S., at 493 (opinion of Powell, J.). Although we recognize that the other federal courts "'are better schooled in and more able to interpret the laws of their respective States'" than are we, *Frisby* v. *Schultz*, 487 U. S. 474, 482 (1988), the Court of Appeals' decision strikes us as dubious. Interpreting the term "days" in § 2505.073(A) to mean business days instead of calendar days seems inappropriate and unnecessary because of the express and contrasting use of "business day[s]" in § 2151.85(B)(1). In addition, because appellees are making a facial challenge to a statute, they must show that "no set of circumstances exists under which the Act would be valid." *Webster* v. *Reproductive Health Services*, 492 U. S. 490, 524 (1989) (O'CONNOR, J., concurring). The Court of Appeals should not have invalidated the Ohio statute on a facial challenge based upon a worst-case analysis that may never occur. Cf. Ohio Rev. Code Ann. § 2505.073(A) (Supp. 1988) (allowing the court of appeals, upon the minor's motion, to shorten or extend the time periods). Moreover, under our precedents, the mere possibility that the procedure may require up to 22 days in a rare case is plainly insufficient to invalidate the statute on its face. *Ashcroft*, for example, upheld a Missouri statute that contained a bypass procedure that could require 17 calendar days plus a sufficient time for deliberation and decisionmaking at both the trial and appellate levels. See 462 U. S., at 477, n. 4, 491, n. 16.

B

Appellees ask us, in effect, to extend the criteria used by some Members of the Court in *Bellotti* and the cases following it by imposing three additional requirements on bypass

procedures. First, they challenge the constructive authorization provisions in H. B. 319, which enable a minor to obtain an abortion without notifying one of her parents if either the juvenile court or the court of appeals fails to act within the prescribed time limits. See Ohio Rev. Code Ann. §§ 2151.85 (B)(1), 2505.073(A), and 2919.12(B)(1)(a)(iv) (1987 and Supp. 1988). They speculate that the absence of an affirmative order when a court fails to process the minor's complaint will deter the physician from acting.

We discern no constitutional defect in the statute. Absent a demonstrated pattern of abuse or defiance, a State may expect that its judges will follow mandated procedural requirements. There is no showing that the time limitations imposed by H. B. 319 will be ignored. With an abundance of caution, and concern for the minor's interests, Ohio added the constructive authorization provisions in H. B. 319 to ensure expedition of the bypass procedures even if these time limits are not met. The State represents that a physician can obtain certified documentation from the juvenile or appellate court that constructive authorization has occurred. Brief for Appellant 36. We did not require a similar safety net in the bypass procedures in *Ashcroft, supra,* at 479–480, n. 4, and find no defect in the procedures that Ohio has provided.

Second, appellees ask us to rule that a bypass procedure cannot require a minor to prove maturity or best interests by a standard of clear and convincing evidence. They maintain that, when a State seeks to deprive an individual of liberty interests, it must take upon itself the risk of error. See *Santosky* v. *Kramer,* 455 U. S. 745, 755 (1982). House Bill 319 violates this standard, in their opinion, not only by placing the burden of proof upon the minor, but also by imposing a heightened standard of proof.

This contention lacks merit. A State does not have to bear the burden of proof on the issues of maturity or best interests. The principal opinion in *Bellotti* indicates that a State may require the minor to prove these facts in a bypass

procedure. See 443 U. S., at 643 (opinion of Powell, J.). A State, moreover, may require a heightened standard of proof when, as here, the bypass procedure contemplates an *ex parte* proceeding at which no one opposes the minor's testimony. We find the clear and convincing standard used in H. B. 319 acceptable. The Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Cross* v. *Ledford,* 161 Ohio St. 469, 477, 120 N. E. 2d 118, 123 (1954) (emphasis deleted).

Our precedents do not require the State to set a lower standard. Given that the minor is assisted in the courtroom by an attorney as well as a guardian ad litem, this aspect of H. B. 319 is not infirm under the Constitution.

Third, appellees contend that the pleading requirements in H. B. 319 create a trap for the unwary. The minor, under the statutory scheme and the requirements prescribed by the Ohio Supreme Court, must choose among three pleading forms. See Ohio Rev. Code Ann. § 2151.85(C) (Supp. 1988); App. 6–14. The first alleges only maturity and the second alleges only best interests. She may not attempt to prove both maturity and best interests unless she chooses the third form, which alleges both of these facts. Appellees contend that the complications imposed by this scheme deny a minor the opportunity, required by the principal opinion in *Bellotti,* to prove either maturity or best interests or both. See 443 U. S., at 643–644.

Even on the assumption that the pleading scheme could produce some initial confusion because few minors would have counsel when pleading, the simple and straightforward procedure does not deprive the minor of an opportunity to

prove her case. It seems unlikely that the Ohio courts will treat a minor's choice of complaint form without due care and understanding for her unrepresented status. In addition, we note that the minor does not make a binding election by the initial choice of pleading form. The minor, under H. B. 319, receives appointed counsel after filing the complaint and may move for leave to amend the pleadings. See § 2151.85(B)(2); Ohio Rule Juvenile Proc. 22(B); see also *Hambleton* v. *R. G. Barry Corp.*, 12 Ohio St. 3d 179, 183–184, 465 N. E. 2d 1298, 1302 (1984) (finding a liberal amendment policy in the state civil rules). Regardless of whether Ohio could have written a simpler statute, H. B. 319 survives a facial challenge.

## III

Appellees contend our inquiry does not end even if we decide that H. B. 319 conforms to *Danforth, Bellotti, Matheson, Ashcroft,* and *Akron.* They maintain that H. B. 319 gives a minor a state-law substantive right "to avoid unnecessary or hostile parental involvement" if she can demonstrate that her maturity or best interests favor abortion without notifying one of her parents. They argue that H. B. 319 deprives the minor of this right without due process because the pleading requirements, the alleged lack of expedition and anonymity, and the clear and convincing evidence standard make the bypass procedure unfair. See *Mathews* v. *Eldridge,* 424 U. S. 319, 335 (1976). We find no merit in this argument.

The confidentiality provisions, the expedited procedures, and the pleading form requirements, on their face, satisfy the dictates of minimal due process. We see little risk of erroneous deprivation under these provisions and no need to require additional procedural safeguards. The clear and convincing evidence standard, for reasons we have described, does not place an unconstitutional burden on the types of proof to be presented. The minor is assisted by an attorney and a guardian ad litem and the proceeding is *ex parte.* The

standard ensures that the judge will take special care in deciding whether the minor's consent to an abortion should proceed without parental notification. As a final matter, given that the statute provides definite and reasonable deadlines, Ohio Rev. Code Ann. § 2505.073(A) (Supp. 1988), the constructive authorization provision, § 2151.85(B)(1), also comports with due process on its face.

## IV

Appellees, as a final matter, contend that we should invalidate H. B. 319 in its entirety because the statute requires the parental notice to be given by the physician who is to perform the abortion. In *Akron*, the Court found unconstitutional a requirement that the attending physician provide the information and counseling relevant to informed consent. See 462 U. S., at 446–449. Although the Court did not disapprove of informing a woman of the health risks of an abortion, it explained that "[t]he State's interest is in ensuring that the woman's consent is informed and unpressured; the critical factor is whether she obtains the necessary information and counseling from a qualified person, not the identity of the person from whom she obtains it." *Id.*, at 448. Appellees maintain, in a similar fashion, that Ohio has no reason for requiring the minor's physician, rather than some other qualified person, to notify one of the minor's parents.

Appellees, however, have failed to consider our precedent on this matter. We upheld, in *Matheson*, a statute that required a physician to notify the minor's parents. See 450 U. S., at 400. The distinction between notifying a minor's parents and informing a woman of the routine risks of an abortion has ample justification; although counselors may provide information about general risks as in *Akron*, appellees do not contest the superior ability of a physician to garner and use information supplied by a minor's parents upon receiving notice. We continue to believe that a State may require the physician himself or herself to take reasonable

steps to notify a minor's parent because the parent often will provide important medical data to the physician. As we explained in *Matheson:*

"The medical, emotional, and psychological consequences of an abortion are serious and can be lasting; this is particularly so when the patient is immature. An adequate medical and psychological case history is important to the physician. Parents can provide medical and psychological data, refer the physician to other sources of medical history, such as family physicians, and authorize family physicians to give relevant data." 450 U. S., at 411 (footnote omitted).

The conversation with the physician, in addition, may enable a parent to provide better advice to the minor. The parent who must respond to an event with complex philosophical and emotional dimensions is given some access to an experienced and, in an ideal case, detached physician who can assist the parent in approaching the problem in a mature and balanced way. This access may benefit both the parent and child in a manner not possible through notice by less qualified persons.

Any imposition on a physician's schedule, by requiring him or her to give notice when the minor does not have consent from one of her parents or court authorization, must be evaluated in light of the complete statutory scheme. The statute allows the physician to send notice by mail if he or she cannot reach the minor's parent "after a reasonable effort," Ohio Rev. Code Ann. § 2919.12(B)(2) (1987), and also allows him or her to forgo notice in the event of certain emergencies, see § 2919.12(C)(2). These provisions are an adequate recognition of the physician's professional status. On this facial challenge, we find the physician notification requirement unobjectionable.

V

The Ohio statute, in sum, does not impose an undue, or otherwise unconstitutional, burden on a minor seeking an

abortion.  We believe, in addition, that the legislature acted
in a rational manner in enacting H. B. 319.  A free and en-
lightened society may decide that each of its members should
attain a clearer, more tolerant understanding of the profound
philosophic choices confronted by a woman who is considering
whether to seek an abortion.  Her decision will embrace her
own destiny and personal dignity, and the origins of the other
human life that lie within the embryo.  The State is entitled
to assume that, for most of its people, the beginnings of that
understanding will be within the family, society's most inti-
mate association.  It is both rational and fair for the State
to conclude that, in most instances, the family will strive to
give a lonely or even terrified minor advice that is both com-
passionate and mature.  The statute in issue here is a ra-
tional way to further those ends.  It would deny all dignity
to the family to say that the State cannot take this reasonable
step in regulating its health professions to ensure that, in
most cases, a young woman will receive guidance and under-
standing from a parent.  We uphold H. B. 319 on its face and
reverse the judgment of the Court of Appeals.

*It is so ordered.*

JUSTICE SCALIA, concurring.

I join the opinion of the Court, because I agree that the
Ohio statute neither deprives minors of procedural due proc-
ess nor contradicts our holdings regarding the constitutional
right to abortion.  I continue to believe, however, as I said in
my separate concurrence last Term in *Webster* v. *Reproduc-
tive Health Services*, 492 U. S. 490 (1989), that the Constitu-
tion contains no right to abortion.  It is not to be found in the
longstanding traditions of our society, nor can it be logically
deduced from the text of the Constitution—not, that is, with-
out volunteering a judicial answer to the nonjusticiable ques-
tion of when human life begins.  Leaving this matter to the
political process is not only legally correct, it is pragmatically
so.  That alone—and not lawyerly dissection of federal judi-

cial precedents—can produce compromises satisfying a sufficient mass of the electorate that this deeply felt issue will cease distorting the remainder of our democratic process. The Court should end its disruptive intrusion into this field as soon as possible.

JUSTICE STEVENS, concurring in part and concurring in the judgment.

As the Court emphasizes, appellees have challenged the Ohio statute only on its face. The State may presume that, in most of its applications, the statute will reasonably further its legitimate interest in protecting the welfare of its minor citizens. See *H. L.* v. *Matheson,* 450 U. S. 398, 422–423 (1981) (STEVENS, J., concurring in judgment). In some of its applications, however, the one-parent notice requirement will not reasonably further that interest. There will be exceptional situations in which notice will cause a realistic risk of physical harm to the pregnant woman, will cause trauma to an ill parent, or will enable the parent to prevent the abortion for reasons that are unrelated to the best interests of the minor. The Ohio statute recognizes that possibility by providing a judicial bypass. The question in this case is whether that statutory protection for the exceptional case is so obviously inadequate that the entire statute should be invalidated. I am not willing to reach that conclusion before the statute has been implemented and the significance of its restrictions evaluated in the light of its administration. I therefore agree that the Court of Appeals' judgment must be reversed, and I join Parts I–IV of the Court's opinion.[1]

---

[1] It is perhaps trite for a judge to reiterate the familiar proposition that an opinion about the facial constitutionality of a statute says nothing about the judge's views concerning the wisdom or unwisdom of the measure. I have made this observation before, see *National League of Cities* v. *Usery,* 426 U. S. 833, 881 (1976) (dissenting opinion), and am moved by JUSTICE BLACKMUN's eloquent dissent to do so again. It would indeed be difficult to contend that each of the challenged provisions of the Ohio statute—or the entire mosaic—represents wise legislation.

The Court correctly states that we have not decided the specific question whether a judicial bypass procedure is necessary in order to save the constitutionality of a one-parent notice statute. See *ante*, at 510. We have, however, squarely held that a requirement of preabortion parental notice in all cases involving pregnant minors is unconstitutional. Although it need not take the form of a judicial bypass, the State must provide an adequate mechanism for cases in which the minor is mature or notice would not be in her best interests.

In *Akron* v. *Akron Center for Reproductive Health, Inc.*, 462 U. S. 416 (1983), the city argued that the constitutionality of its ordinance requiring parental consent was saved by the minor's opportunity to invoke the State's juvenile court procedures. We held the same day in *Planned Parenthood Assn. of Kansas City, Mo., Inc.* v. *Ashcroft*, 462 U. S. 476, 493 (1983) (opinion of Powell, J.), that a similar provision which did not require parental notification avoided any constitutional infirmities in such a statute. We rejected the argument in *Akron*, however, because the procedures in that case required that the parent be given notice when the minor's petition was filed. Writing for six Justices, including the author of the Court's opinion in *H. L.* v. *Matheson, supra*, Justice Powell explained:

> "Even assuming that the Ohio courts would construe these provisions as permitting a minor to obtain judicial approval for the 'proper or necessary . . . medical or surgical care' of an abortion, where her parents had refused to provide that care, the statute makes no provision for a mature or emancipated minor completely to avoid hostile parental involvement by demonstrating to the satisfaction of the court that she is capable of exercising her constitutional right to choose an abortion. On the contrary, the statute requires that the minor's parents be notified once a petition has been filed, [Ohio Rev. Code Ann.] § 2151.28 [(Supp. 1982)], a requirement that in the case

of a mature minor seeking an abortion would be unconstitutional. See *H. L.* v. *Matheson,* 450 U. S., at 420 (POWELL, J., concurring); *id.,* at 428, n. 3 (MARSHALL, J., dissenting)." 462 U. S., at 441, n. 31.

Thus, while a judicial bypass may not be necessary to take care of the cases in which the minor is mature or parental notice would not be in her best interests—and, indeed, may not be the preferable mechanism—the Court has held that some provision must be made for such cases.

The Ohio statute, on its face, provides a sufficient procedure for those cases. The pleading requirements and the constructive authorization and confidentiality provisions of the Act satisfy the standards established in *Ashcroft, supra,* for a judicial bypass. As the Court states, the minor is not bound by her initial choice of pleading form, *ante,* at 517, the constructive authorization provision functions as an additional "safety net" when the statutory deadlines are not met, *ante,* at 515, and the State has taken reasonable steps to ensure confidentiality, *ante,* at 512–513. The requirement that the minor prove maturity or best interests by clear and convincing evidence is supported by the presumption that notification to a parent will in most circumstances be in the minor's best interests: It is not unreasonable to require the minor, *when assisted by counsel and a guardian ad litem, ante,* at 517–518, to overcome that presumption by clear and convincing evidence. Cf. *Parham* v. *J. R.,* 442 U. S. 584, 610 (1979) ("[P]resumption that parents act in the best interests of their child" is relevant in determining what process is due in commitment proceeding).[2] I have more concern

---

[2] The standard of proof for the minor's abortion decision is no more onerous than that for any medical procedure of which the parents may disapprove. Under Ohio law, a determination that a child is neglected or dependent, which is necessary before a court or guardian ad litem may authorize proper or necessary medical or surgical care, must be made by clear and convincing evidence. See Ohio Rev. Code Ann. § 2151.35 (Supp. 1988); see also *In re Willmann,* 24 Ohio App. 3d 191, 198–199, 493 N. E. 2d

about the possible delay in the bypass procedure, but the statute permits the Ohio courts to expedite the procedure upon a showing of good cause, see *ante*, at 515 (citing Ohio Rev. Code Ann. § 2505.073(A) (Supp. 1988)), and sensitive administration of the deadlines may demonstrate that my concern is unwarranted.

There is some tension between the statutory requirement that the treating physician notify the minor's parent and our decision in *Akron*, 462 U. S., at 446–449, that a State may not require the attending physician to personally counsel an abortion patient. One cannot overlook the possibility that this provision was motivated more by a legislative interest in placing obstacles in the woman's path to an abortion, see *Maher* v. *Roe*, 432 U. S. 464, 474 (1977), than by a genuine interest in fostering informed decisionmaking. I agree with the Court, however, that the Ohio statute requires only that the physician take "reasonable steps" to notify a minor's parent and that such notification may contribute to the decisionmaking process. *Ante*, at 518–519. Accordingly, I am unable to conclude that this provision is unconstitutional on its face.

JUSTICE BLACKMUN, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

I

The constitutional right to "control the quintessentially intimate, personal, and life-directing decision whether to carry a fetus to term," *Webster* v. *Reproductive Health Services*, 492 U. S. 490, 538 (1989) (opinion concurring in part and dissenting in part), does "not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of*

---

1380, 1389 (1986); *In re Bibb*, 70 Ohio App. 2d 117, 120, 435 N. E. 2d 96, 99 (1980).

*Central Mo.* v. *Danforth,* 428 U. S. 52, 74 (1976); *Hodgson* v. *Minnesota, ante,* at 435 ("[T]he constitutional protection against unjustified state intrusion into the process of deciding whether or not to bear a child extends to pregnant minors as well as adult women").   Although the Court "has recognized that the State has somewhat broader authority to regulate the activities of children than of adults," in doing so, the State nevertheless must demonstrate that there is a *"significant state interest* in conditioning an abortion . . . that is not present in the case of an adult."   *Danforth,* 428 U. S., at 74–75 (emphasis added).   "Any independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to have become pregnant."  *Id.,* at 75.

"The abortion decision differs in important ways from other decisions that may be made during minority.   The need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a State to act with *particular sensitivity* when it legislates to foster parental involvement in this matter."  *Bellotti* v. *Baird,* 443 U. S. 622, 642 (1979) (opinion of Powell, J.) (emphasis added) *(Bellotti II).*   "[P]articular sensitivity" is mandated because "there are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible."   *Ibid.*   It should be obvious that "considering her probable education, employment skills, financial resources, and emotional maturity, unwanted motherhood may be exceptionally burdensome for a minor."  *Ibid.*

The State of Ohio has acted with particular *in*sensitivity in enacting the statute the Court today upholds.   Rather than create a judicial-bypass system that reflects the sensitivity necessary when dealing with a minor making this deeply intimate decision, Ohio has created a tortuous maze.   Moreover, the State has failed utterly to show that it has any significant

state interest in deliberately placing its pattern of obstacles in the path of the pregnant minor seeking to exercise her constitutional right to terminate a pregnancy. The challenged provisions of the Ohio statute are merely "poorly disguised elements of discouragement for the abortion decision." *Thornburgh* v. *American College of Obstetricians and Gynecologists*, 476 U. S. 747, 763 (1986).

## II

The majority does not decide whether the Ohio parental-notice statute must contain a judicial-bypass procedure because the majority concludes that the bypass procedure in the statute "meets the requirements identified for parental consent statutes in *Danforth, Bellotti, Ashcroft,* and *Akron.*" *Ante,* at 510. I conclude, however, that, because of the minor's emotional vulnerability and financial dependency on her parents, and because of the "unique nature of the abortion decision," *Bellotti II,* 443 U. S., at 642, and its consequences, a parental-notice statute is tantamount to a parental-consent statute. As a practical matter, a notification requirement will have the same deterrent effect on a pregnant minor seeking to exercise her constitutional right as does a consent statute. See *Akron* v. *Akron Center for Reproductive Health, Inc.,* 462 U. S. 416, 441, n. 31 (1983); *H. L.* v. *Matheson,* 450 U. S. 398, 420, n. 9 (1981) (concurring opinion). Thus a notice statute, like a consent statute, must contain a bypass procedure that comports with the standards set forth in *Bellotti II.* Because I disagree with the Court's conclusion that the Ohio bypass procedure complies with the dictates of *Bellotti II* and its progeny, I would strike down Ohio Amended Substitute House Bill 319.

The *Bellotti II* principal opinion stated: "A pregnant minor is entitled in such a [judicial-bypass] proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2)

that even if she is not able to make this decision independently, the desired abortion would be in her best interests." 443 U. S., at 643–644 (opinion of Powell, J.) (footnote omitted). The language of the Ohio statute purports to follow the standards for a bypass procedure that are set forth in *Bellotti II*, but at each stage along the way, the statute deliberately places "substantial state-created obstacles in the pregnant [minor's] path to an abortion," *Maher* v. *Roe*, 432 U. S. 464, 477, n. 10 (1977), in the legislative hope that she will stumble, perhaps fall, and at least ensuring that she "conquer a multi-faceted obstacle course" before she is able to exercise her constitutional right to an abortion. Dellinger & Sperling, Abortion and the Supreme Court: Retreat from *Roe v. Wade*, 138 U. Pa. L. Rev. 83, 100 (1989). The majority considers each provision in a piecemeal fashion, never acknowledging or assessing the "degree of burden that the entire regime of abortion regulations places" on the minor. *Ibid.*

## A

The obstacle course begins when the minor first enters the courthouse to fill out the complaint forms. The "'procedural trap,'" as it appropriately was described by the Court of Appeals, *Akron Center for Reproductive Health* v. *Slaby*, 854 F. 2d 852, 863 (CA6 1988), requires the minor to choose among three forms. The first alleges *only* maturity; the second alleges *only* that the abortion is in her best interest. App. 6–11. Only if the minor chooses the third form, which alleges both, *id.*, at 12–13, may the minor attempt to prove both maturity *and* best interest as is her right under *Bellotti II*. See Ohio Rev. Code Ann. § 2151.85(C)(3) (Supp. 1988). The majority makes light of what it acknowledges might be "some initial confusion" of the unsophisticated minor who is trying to deal with an unfamiliar and mystifying court system on an intensely intimate matter. *Ante*, at 516–517. The Court points out that the minor, with counsel appointed after she filed the complaint, "may move for leave to amend the

pleadings" and avers that it "seems unlikely that the Ohio courts will treat a minor's choice of complaint form without due care." *Ante,* at 517. I would take the Ohio Legislature's word, however, that its pleading requirement was intended to be meaningful. The constitutionality of a procedural provision cannot be analyzed on the basis that it may have no effect. If the pleading requirement prevents some minors from showing either that they are mature or that an abortion would be in their best interests, it plainly is unconstitutional.

The majority fails to elucidate *any* state interest in setting up this barricade for the young pregnant woman—a barricade that will "serve only to confuse . . . her and to heighten her anxiety." *Thornburgh,* 476 U. S., at 762. The justification the State put forward before the Court of Appeals was the "absurd contention that '[a]ny minor claiming to be mature and well enough informed to independently make such an important decision as an abortion should also be mature enough to file her complaint under [the appropriate subsection].'" See 854 F. 2d, at 863, quoting Brief for State of Ohio in No. 86–3664, (CA6), p. 43. This proffered "justification" is even more harsh than the Court of Appeals noted. It excludes the mature minor who may not have the intellectual capacity to understand these tangled forms, and it spurns the immature minor who is abused or who contends for some other reason that an abortion without parental involvement would be in her best interest. Surely, the goal of the court proceeding is to assist, not to entrap, the young pregnant woman.

The State's interest in "streamlining" the claims, belatedly asserted for the first time before this Court, is no less absurd. It is ludicrous to confound the pregnant minor, forced to go to court at this time of crisis in her life, with alternative complaint forms that must later be rescinded by appointed counsel and replaced by the only form that is constitutionally valid. Moreover, this ridiculous pleading scheme leaves to the judge's discretion whether the minor may amend her

pleading and attempt to prove both her maturity and best interest. To allow the resolution of this vital issue to turn on a judge's discretion does not comport with *Bellotti II*'s declaration that the minor who "fails to satisfy the court that she is competent to make this decision independently . . . *must* be permitted to show that an abortion nevertheless would be in her best interests." 443 U. S., at 647–648 (opinion of Powell, J.) (emphasis added).

### B

As the pregnant minor attempts to find her way through the labyrinth set up by the State of Ohio, she encounters yet another obstruction even before she has completed the complaint form. In *Bellotti II*, the principal opinion insisted that the judicial-bypass procedure "must assure that a resolution of the issue, and any appeals that may follow, will be completed with *anonymity* . . . ." *Id.*, at 644 (emphasis added). That statement was not some idle procedural requirement, but stems from the proposition that the Due Process Clause protects the woman's right to make her decision "independently and privately." *Hodgson, ante,* at 434. The zone of privacy long has been held to encompass an "individual interest in avoiding disclosure of personal matters." *Whalen* v. *Roe,* 429 U. S. 589, 599 (1977). The Ohio statute does not safeguard that right. Far from keeping the identity of the minor anonymous, the statute requires the minor to sign her full name and the name of one of her parents on the complaint form. See App. 6–14 (pleading forms). See *ante,* at 512 ("Unless the minor has counsel, she must sign a complaint form to initiate the bypass procedure and, even if she has counsel, she must supply the name of one of her parents at four different places"). Acknowledging that "[c]onfidentiality differs from anonymity," the majority simply asserts that "complete anonymity" is not "critical." *Ante,* at 513. That easy conclusion is irreconcilable with *Bellotti*'s anonymity requirement. The definition of "anonymous" is "not named or identified."

Webster's Ninth New Collegiate Dictionary 88 (1983). Complete anonymity, then, appears to be the only kind of anonymity that a person could possibly have. The majority admits that case law regarding the anonymity requirement has permitted no less. See *ante*, at 512, citing *Planned Parenthood League of Massachusetts* v. *Bellotti*, 641 F. 2d 1006, 1025 (CA1 1981) (pseudonym); *Planned Parenthood Assn. of Kansas City, Mo., Inc.* v. *Ashcroft*, 462 U. S. 476, 491, n. 16 (1983) (initials). See also *Thornburgh*, 476 U. S., at 766 ("[T]he decision to terminate a pregnancy is an intensely private one that must be protected in a way that assures anonymity").

The majority points to Ohio laws requiring court employees not to disclose public documents, blithely assuming that the "mere possibility of unauthorized, illegal disclosure by state employees" is insufficient to establish that the confidentiality of the proceeding is not protected. *Ante*, at 513. In fact, the provisions regarding the duty of court employees not to disclose public documents amount to no more than "generally stated principles of . . . confidentiality." *American College of Obstetricians and Gynecologists* v. *Thornburgh*, 737 F. 2d 283, 297 (CA3 1984), aff'd on other grounds, 476 U. S. 747 (1986). As the District Court pointed out, there are no indications of how a clerk's office, large or small, is to ensure that the records of abortion cases will be distinguished from the records of all other cases that are available to the public. *Akron Center for Reproductive Health* v. *Rosen*, 633 F. Supp. 1123, 1143–1144 (ND Ohio 1986). Cf. *Planned Parenthood League of Massachusetts* v. *Bellotti*, 641 F. 2d, at 1025 (minor proceeds under pseudonym and affidavit containing her identity is kept in separate, sealed file). Nor are there measures for sealing the record after the case is closed to prevent its public availability; *Planned Parenthood Assn. of the Atlanta Area, Inc.* v. *Harris*, 670 F. Supp. 971, 991 (ND Ga. 1987) (noting with disapproval that Georgia statute made no provision for court documents to be sealed).

This Court is well aware that, unless special care is taken, court documents of an intimate nature will find their way to the press and public. See *The Florida Star* v. *B. J. F.*, 491 U. S. 524 (1989) (reporter in police room copied police report and published article with rape victim's full name). The State has offered no justification for its failure to provide specific guidelines to be followed by the juvenile court to ensure anonymity for the pregnant minor—even though it has in place a procedure to assure the anonymity of juveniles who have been adjudicated delinquent or unruly. See Ohio Rev. Code Ann. § 2151.358 (1976) (detailed provision for sealing record and for expungement of record).

"A woman and her physician will necessarily be more reluctant to choose an abortion if there exists a possibility that her decision and her identity will become known publicly." *Thornburgh*, 476 U. S., at 766. A minor, whose very purpose in going through a judicial-bypass proceeding is to avoid notifying a hostile or abusive parent, would be most alarmed at signing her name and the name of her parent on the complaint form. Generalized statements concerning the confidentiality of records would be of small comfort, even if she were aware of them. True anonymity is essential to an effective, meaningful bypass. In the face of the forms that the minor must actually deal with, the State's assurances that the minor's privacy will be protected ring very hollow. I would not permit the State of Ohio to force a minor to forgo her anonymity in order to obtain a waiver of the parental-notification requirement.

C

Because a "pregnant adolescent . . . cannot preserve for long the possibility of aborting, which effectively expires in a matter of weeks from the onset of pregnancy," this Court has required that the State "must assure" that the "resolution of the issue, and any appeals that may follow, will be completed with . . . sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Bellotti II*, 443

U. S., at 642, 644 (opinion of Powell, J.); see also *H. L.* v. *Matheson,* 450 U. S., at 412 (time is of the essence in an abortion decision). Ohio's judicial-bypass procedure can consume up to three weeks of a young woman's pregnancy. I would join the Sixth Circuit, the District Court, and the other federal courts that have held that a time span of this length fails to guarantee a sufficiently expedited procedure. See 854 F. 2d, at 868; 633 F. Supp., at 1143. See also, *e. g., American College of Obstetricians and Gynecologists* v. *Thornburgh,* 656 F. Supp. 879, 887–888 (ED Pa. 1987) (statutory scheme allowing 23 days for judicial proceeding is unconstitutional); *Glick* v. *McKay,* 616 F. Supp. 322, 326–327 (Nev. 1985).

The majority is unconcerned that "the procedure may require up to 22 days in a rare case." *Ante,* at 514. I doubt the "rarity" of such cases. In any event, the Court of Appeals appropriately pointed out that, because a minor often does not learn of her pregnancy until a late stage in the first trimester, time lost during that trimester is especially critical. 854 F. 2d, at 867–868. The Court ignores the fact that the medical risks surrounding abortion increase as pregnancy advances and that such delay may push a woman into her second trimester, where the medical risks, economic costs, and state regulation increase dramatically. See *Roe* v. *Wade,* 410 U. S. 113, 150, 163 (1973); *H. L.* v. *Matheson,* 450 U. S., at 439, and n. 25 (dissenting opinion). Minors, who are more likely to seek later abortions than adult women,[1] and who usually are not financially independent, will suffer acutely from any delay. See *Ashcroft,* 462 U. S., at 497–498 (opinion concurring in part and dissenting in part) (an increased cost factor "may seem insignificant from the Court's comfortable perspective," but is not "equally insignificant" to "the unemployed teenager" for whom this additional cost may well put an abortion beyond reach). Because a delay of up to 22

---

[1] Indeed, the threat of parental notice itself may cause a minor to delay requesting assistance with her pregnancy. See *H. L.* v. *Matheson,* 450 U. S. 398, 439, and n. 25 (1981) (dissenting opinion).

days may limit significantly a woman's ability to obtain an abortion, I agree with the conclusions of the District Court and the Court of Appeals that the statute violates this Court's command that a judicial-bypass proceeding be conducted with sufficient speed to maintain "an effective opportunity for an abortion to be obtained." *Bellotti II*, 443 U. S., at 644 (opinion of Powell, J.).[2]

## D

The Ohio statute provides that if the juvenile or appellate courts fail to act within the statutory time frame, an abortion without parental notification is "constructively" authorized. Although Ohio's Legislature may have intended this provision to expedite the bypass procedure, the confusion that will result from the constructive-authorization provision will add further delay to the judicial-bypass proceeding, and is yet one more obstruction in the path of the pregnant minor. The physician risks civil damages, criminal penalties, including imprisonment, as well as revocation of his license for disobeying the statute's commands, but the statute provides for no formal court order or other relief to safeguard the physician from these penalties. See §§ 2151.85(B)(1), 2919.12(D), 2919.12(E), 4731.22(B)(23). The State argues that a combination of a date-stamped copy of the minor's complaint and

---

[2] The majority finds comfort in *Planned Parenthood of Kansas City, Mo., Inc.* v. *Ashcroft*, 462 U. S. 476 (1983), and insists that this Court upheld a Missouri statute that contained a bypass procedure "that could require 17 calendar days plus a sufficient time for deliberation and decision-making at both the trial and appellate levels." *Ante*, at 514. The majority disregards the limited nature of the *Ashcroft* holding. The Court there looked only at the Missouri appellate procedure and determined that the 24-hour deadline for docketing the appeal and the 5-day deadline for completing the record and perfecting the appeal, together with the requirement that the Missouri Supreme Court provide for expedited appeal by court rule, provided a constitutionally sufficient "framework" for complying with *Bellotti*'s mandate for expedited appeals. See 462 U. S., at 491, n. 16. The Court made no ruling as to whether the Missouri law provided constitutionally sufficient expedition at the initial stages of the bypass.

a "docket sheet showing no entry" would inform the physician that the abortion could proceed.   Brief for Appellant 36. Yet, the mere absence of an entry on a court's docket sheet hardly would be reassuring to a physician facing such dire consequences, and the State offers no reason why a formal order or some kind of actual notification from the clerk of court would not be possible.   There is no doubt that the nebulous authorization envisioned by this statute "in conjunction with a statute imposing strict civil and criminal liability . . . could have a profound chilling effect on the willingness of physicians to perform abortions . . . ."   *Colautti* v. *Franklin*, 439 U. S. 379, 396 (1979).   I agree with the Court of Appeals that the "practical effect" of the "'pocket approval'" provision is to frustrate the minor's right to an expedient disposition of her petition.   854 F. 2d, at 868.

## E

If the minor is able to wend her way through the intricate course of preliminaries Ohio has set up for her and at last reaches the court proceeding, the State shackles her even more tightly with still another "extra layer and burden of regulation on the abortion decision." *Danforth*, 428 U. S., at 66.   The minor must demonstrate by "clear and convincing evidence" either (1) her maturity; (2) or that one of her parents has engaged in a pattern of physical, sexual, or emotional abuse against her; or (3) that notice to a parent is not in her best interest.   § 2151.85(C).   The imposition of this heightened standard of proof unduly burdens the minor's right to seek an abortion and demonstrates a fundamental misunderstanding of the real nature of a court-bypass proceeding.

The function of a standard of proof is to "'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions,'" *Addington* v. *Texas*, 441 U. S. 418, 423 (1979), quoting *In re Winship*, 397 U. S. 358, 370 (1970) (concurring opinion), and is "a societal judgment about how the risk of error

should be distributed between the litigants." *Santosky* v. *Kramer*, 455 U. S. 745, 755 (1982). By imposing such a stringent standard of proof, this Ohio statute improperly places the risk of an erroneous decision on the minor, the very person whose fundamental right is at stake. Cf. *id.*, at 756 (clear and convincing standard of proof usually has been employed to preserve fundamental fairness in a variety of *government-initiated* proceedings that threaten to deprive the *individual* involved with a significant deprivation of liberty). Even if the judge is satisfied that the minor is mature or that an abortion is in her best interest, the court may not authorize the procedure unless it additionally finds that the evidence meets a "clear and convincing" standard of proof.

The majority asserts that a State may require a heightened standard of proof because the procedure is *ex parte*. *Ante*, at 516. According to the majority, the only alternative to the "clear and convincing" standard is a preponderance of the evidence standard, which would require proof by the greater weight of the evidence. The majority reasons that the preponderance standard is unsuited to a *Bellotti II* bypass because, if the minor presents any evidence at all, and no evidence is put forth in opposition, the minor always will present the greater weight of the evidence. Yet, as the State explained at argument, the bypass procedure is inquisitorial in nature, where the judge questions the minor to discover if she meets the requirements set down in *Bellotti II*. See Tr. of Oral Arg. 9. The judge will be making this determination after a hearing that resembles an interview, not an evidentiary proceeding.[3] The District Court observed, "the

---

[3] *Bellotti* v. *Baird*, 443 U. S. 622 (1979), itself recognized the unique nature of the bypass procedure when it required the minor merely to show or satisfy the court that she is mature or that an abortion would be in her best interests, without imposing any standard of proof. See also *id.*, at 643, n. 22 (opinion of Powell, J.) ("Much can be said for employing procedures and a forum less formal than those associated with a court of general jurisdiction").

judge's decision will necessarily be based largely on subjective standards without the benefit of any evidence other then a woman's testimony." 633 F. Supp., at 1137. Thus, unlike the procedure the majority seems to envision, it is not the quantity of the evidence presented that is crucial in the bypass proceeding; rather, the crucial factors are the nature of the minor's statements to the judge and her demeanor. Contrary to the majority's theory, if the minor presents evidence that she is mature, she still must *satisfy* the judge that this is so, even without this heightened standard of proof. The use of a heightened standard in the very special context of *Bellotti*'s court-bypass procedure does little to facilitate a fair and reliable result and imports an element from the adversarial process into this unique inquiry where it has no rightful place.

Although I think the provision is constitutionally infirm for all minors, I am particularly concerned about the effect it will have on sexually or physically abused minors. I agree that parental interest in the welfare of their children is "particularly strong where a *normal* family relationship exists." *Bellotti II*, 443 U. S., at 648 (opinion of Powell, J.) (emphasis added). A minor needs no statute to seek the support of loving parents. Where trust and confidence exist within the family structure, it is likely that communication already exists.[4] If that compassionate support is lacking, an unwanted pregnancy is a poor way to generate it.

Sadly, not all children in our country are fortunate enough to be members of loving families. For too many young pregnant women, parental involvement in this most intimate deci-

---

[4] It has been said that the majority of all minors voluntarily tell their parents about their pregnancy. The overwhelming majority of those under 16 years of age do so. See Torres, Forrest, & Eisman, Telling Parents: Clinic Policies and Adolescents' Use of Family Planning and Abortion Services, 12 Family Planning Perspectives 284, 287–288, 291 (1980).

sion threatens harm, rather than promises comfort.[5] The Court's selective blindness to this stark social reality is bewildering and distressing. Lacking the protection that young people typically find in their intimate family associations, these minors are desperately in need of constitutional protection. The sexually or physically abused minor may indeed be "lonely or even terrified," *ante*, at 520, not of the abortion procedure, but of an abusive family member.[6] The Court's placid reference, *ibid.*, to the "compassionate and mature" advice the minor will receive from within the family must seem an unbelievable and cruel irony to those children trapped in violent families.[7]

Under the system Ohio has set up, a sexually abused minor must go to court and demonstrate to a complete stranger by clear and convincing evidence that she has been the victim of a pattern of sexual abuse. When asked at argument what kind of evidence a minor would be required to adduce at her bypass hearing, the State answered that the minor would tell her side to the judge and the judge would consider how well

---

[5] In 1986, more than 1 million children and adolescents suffered harm from parental abuse or neglect, including sexual abuse. See Brief for American Psychological Association et al. as *Amici Curiae* 9–10, and sources cited therein. This figure is considered to be a minimum estimate because the incidence of abuse is substantially underreported. Pregnancy does not deter, and may even precipitate, physical attacks on women. *Ibid.*

[6] "[P]regnant minors may attempt to self-abort or to obtain an illegal abortion rather than risk parental notification." *H. L.* v. *Matheson,* 450 U. S., at 439, and n. 26 (dissenting opinion).

[7] The majority and the State of Ohio piously fail to mention what happens to these unwanted babies, born to mothers who are little more than children themselves, who have little opportunity, education, or life skills. Too often, the unwanted child becomes trapped in a cycle of poverty, despair, and violence. This Court, by experience, knows all too well that the States are unable adequately to supervise and protect these vulnerable citizens. See *Baltimore City Dept. of Social Services* v. *Bouknight,* 493 U. S. 549 (1990); *DeShaney* v. *Winnebago County Dept. of Social Services,* 489 U. S. 189 (1989).

"the minor is able to articulate what her particular concerns are." Tr. of Oral Arg. 9. The court procedure alone, in many cases, is extremely traumatic. See *Hodgson, ante,* at 441, and n. 29. The State and the Court are impervious to the additional burden imposed on the abused minor who, as any experienced social worker or counselor knows, is often afraid and ashamed to reveal what has happened to her to anyone outside the home. The Ohio statute forces that minor, despite her very real fears, to experience yet one more hardship. She must attempt, in public, and before strangers, to "articulate what her particular concerns are" with sufficient clarity to meet the State's "clear and convincing evidence" standard. The upshot is that for the abused minor the risk of error entails a risk of violence.

I would affirm the judgments below on the grounds of the several constitutional defects identified by the District Court and the Court of Appeals. The pleading requirements, the so-called and fragile guarantee of anonymity, the insufficiency of the expedited procedures, the constructive-authorization provision, and the "clear and convincing evidence" requirement singly and collectively cross the limit of constitutional acceptance.

### III

Even if the Ohio statute complied with the *Bellotti II* requirements for a constitutional court bypass, I would conclude that the Ohio procedure is unconstitutional because it requires the physician's personal and nondelegable obligation to give the required statutory notice. Particularly when viewed in context with the other impediments this statute places in the minor's path, there is more than a "possibility" that the physician-notification provision "was motivated more by a legislative interest in placing obstacles in the woman's path to an abortion, see *Maher* v. *Roe,* 432 U. S. 464, 474 (1977), than by a genuine interest in fostering informed decisionmaking." *Ante,* at 524 (STEVENS, J., concurring in judgment). Most telling in this regard is the fact that, according

to the Court of Appeals and the District Court, the State has never claimed that personal notice by the physician was required to effectuate an interest in the minor's health until the matter reached this Court. In fact, the State has taken three different positions as to its justification for this provision. See 854 F. 2d, at 862 ("[T]he state's interest is in insuring that immature, unemancipated minors or minors whose best interests require notification have an adequate opportunity for parental intervention. The state has made no showing that this interest is advanced by requiring the attending physician, as opposed to another qualified, responsible person, to effectuate notification"); 633 F. Supp., at 1135 ("[T]he state's attempt to characterize this duty as 'merely ministerial' does not advance its case at all, but rather suggests that its interest in having the physician perform this function is even less weighty than having him or her perform counseling to obtain informed consent [that was struck down in *Akron* v. *Akron Center for Reproductive Health, Inc.*, 462 U. S. 416 (1983)].") If these chimerical health concerns now asserted in fact were the true motivation behind this provision, I seriously doubt that the State would have taken so long to say so.

Even if the State's interest in the health of the minor were the motivation behind the provision, the State never explains why it is that a physician interested in obtaining information, or a parent interested in providing information to a physician, cannot do so following the actual notification by some other competent professional, such as a nurse or counselor. And the State and the majority never explain why, if the physician's ability to garner information from the parents is of such paramount importance that only the physician may notify the parent, the statute allows the physician to send notice by mail if he or she cannot reach the minor's parent "after a reasonable effort." § 2919.12(B)(2).

The State's asserted interest in the minor's health care is especially ironic in light of the statute's interference with her

physician's experienced professional judgment.[8] "If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment," *Doe* v. *Bolton*, 410 U. S. 179, 199 (1973), and he should be permitted to exercise that judgment as to whether he or another professional should be the person who will notify a minor's parents of her decision to terminate her pregnancy. I have no doubt that the attending physician, better than the Ohio Legislature, will know when a consultation with the parent is necessary. "If he fails in this, professional censure and deprivation of his license are available remedies" already in place. *Ibid.* The strictures of this Ohio law not only unduly burden the minor's right to an abortion, but impinge on the physician's professional discretion in the practice of medicine.[9]

## IV

The Ohio Legislature, in its wisdom, in 1985 enacted its antiabortion statute. That statute, when subjected to facial challenge, has been held unconstitutional by the United States District Court for the Northern District of Ohio and by the Court of Appeals for the Sixth Circuit. It is now, however, upheld on that challenge by a majority of this Court. The majority opinion takes up each challenged provi-

---

[8] In light of its asserted interest, I find it odd that Ohio allows minors to consent to treatment for sexually transmitted diseases, Ohio Rev. Code Ann. § 3709.241 (1988), and drug and alcohol abuse, § 3719.012(A). In each of these sensitive areas of health care, the State apparently trusts the physician to use his informed medical judgment as to whether he should question or inform the parent about the minor's medical and psychological condition.

[9] The majority's reliance on *H. L.* v. *Matheson* is misplaced. In that case, unlike this one, the Utah Supreme Court had limited the steps that a physician would have to take to notify the minor's parents. See 450 U. S., at 405. In contrast, in *Akron* v. *Akron Center for Reproductive Health, Inc.,* 462 U. S. 416 (1983), the Court pointed out that the "critical factor is whether she obtains the necessary information and counseling from a *qualified person,* not the identity of the person from whom she obtains it." *Id.,* at 448 (emphasis added).

sion in turn; concludes, with brief comment, that it is within the bounds of the principal opinion in *Bellotti II;* and moves on routinely and in the same fashion to the succeeding provisions, one by one.  A plurality then concludes, in Part V of the primary opinion, with hyperbole that can have but one result: to further incite an American press, public, and pulpit already inflamed by the pronouncement made by a plurality of this Court last Term in *Webster* v. *Reproductive Health Services*, 492 U. S. 490 (1989).  The plurality indulges in paternalistic comments about "profound philosophic choices"; the "[woman's] own destiny and personal dignity"; the "origins of the other human life that lie within the embryo"; the family as "society's most intimate association"; the striving of the family to give to the minor "advice that is both compassionate and mature"; and the desired assumption that "in most cases" the woman will receive "guidance and understanding from a parent."  *Ante*, at 520.

Some of this may be so "in most cases" and, it is to be hoped, in judges' own and other warm and protected, nurturing family environments.  But those "most cases" need not rely on constitutional protections that are so vital for others. I have cautioned before that there is "another world 'out there'" that the Court "either chooses to ignore or fears to recognize."  *Beal* v. *Doe*, 432 U. S. 438, 463 (1977).  It is the unfortunate denizens of that world, often frightened and forlorn, lacking the comfort of loving parental guidance and mature advice, who most need the constitutional protection that the Ohio Legislature set out to make as difficult as possible to obtain.

That that legislature set forth with just such a goal is evident from the statute it spawned.  The underlying nature of the Ohio statute is proclaimed by its strident and offensively restrictive provisions.  It is as though the legislature said: "If the courts of the United States insist on upholding a limited right to an abortion, let us make that abortion as difficult as possible to obtain" because, basically, whether on pro-

fessed moral or religious grounds or whatever, "we believe that is the way it must be." This often may be the way legislation is enacted, but few are the instances where the injustice is so evident and the impediments so gross as those inflicted by the Ohio Legislature on these vulnerable and powerless young women.