PLANNED PARENTHOOD OF SOUTHERN ARIZONA AND ITS CORPORATE CHAPTER, ARIZONA WOMEN'S CLINIC, INC.; Planned Parenthood of Central and Northern Arizona, Inc.; and Dr. David Rhae, M.D., and Dr. Maryanna Friederich, M.D., individually and on behalf of their minor patients, Plaintiffs,

v.

Stephen D. NEELY, as County Attorney for the County of Pima, and as representative for all other prosecuting attorneys similarly situated throughout the State of Arizona, including without limitations City Attorneys, Defendants.

No. CIV 89–489 TUC ACM.

United States District Court,
D. Arizona.

Oct. 8, 1996.

John N. Iurino, Lewis & Roca, Tucson, Arizona, for Plaintiffs.

Anthony B. Ching, Office of Attorney General, Phoenix, Arizona, for Defendants.

## MEMORANDUM DECISION

MARQUEZ, Senior District Judge.

### INTRODUCTION

Plaintiffs originally filed this action on August 29, 1989 to enjoin the Defendants from enforcing the prior version of A.R.S. § 36–2152, which required minor women to obtain parental consent prior to an abortion and imposed criminal penalties on physicians violating the statute. By Order dated September 14, 1992, this Court found that language dealing with "Medical Procedure with Respect to an Abortion" was unconstitutionally vague and further determined that the Statute's medical emergency applied only in life-threatening cases whereas prevailing law requires protection of a woman's right to an abortion without delay if the alternative is a serious health risk. The Court entered a permanent injunction on September 14, 1992. That decision was not appealed.

The Arizona legislature reenacted an amended version of A.R.S. § 36–2152 effective July 20, 1996.

The Court granted Plaintiffs' Motion for Leave to File a Supplemental Complaint challenging the constitutionality of the new statute.

The Plaintiffs are health care providers and physicians providing medical services, including abortions, to unemancipated minor women and thus are parties to whom A.R.S. § 36–2152 purports to apply.

Defendant Stephen D. Neely is the County Attorney for Pima County, Arizona and is the state agent responsible for the administration and enforcement of the statute challenged within the boundaries of Pima County, Arizona. The Court has jurisdiction pursuant to 28 U.S.C. § 2201, 42 U.S.C. § 1983, and the United States Constitution.

The Court has previously certified this action as a Class Action. The Court found that Defendant Neely would fairly and adequately be able to represent the interests of the Class Defendants. The Class Defendants consist of 15 county attorneys, their subordinates, employees, agents, and representatives and all city and other prosecuting attorneys located throughout the State of Arizona and their employees, subordinates, agents, and representatives.

On July 17, 1996, this Court entered a Temporary Restraining Order enjoining the Defendant Stephen D. Neely and all members of the Class from enforcing A.R.S.

§ 36–2152. Counsel were asked to brief the legal issues and the matter was set for hearing on September 6, 1996 (later continued to September 9, 1996).

At the hearing on September 9, 1996, the Court granted the Plaintiffs' Application for a Permanent Injunction. Judgment was entered at that time. This Memorandum explains the Court's reasons for granting of the Permanent Injunction.

## ISSUES BEFORE THE COURT

A.R.S. § 36–2152 reads as follows (insofar as material herein): "A person shall not knowingly perform an abortion on a pregnant unemancipated minor unless the attending physician has secured the written consent from one of the minor's parents...." The Statute further provides the circumstances under which an unemancipated minor woman may terminate her pregnancy without first providing this written consent to her physician. Among the circumstances delineated by the Statute is a procedure by which a woman to whom the Statute applies may seek an order from a Superior Court Judge that the procedure may occur without parental consent. The Superior Court must grant such permission if it finds the minor to be "mature" or if performing the abortion *without the consent of the parent or guardian* would be in her best interest. Plaintiffs complain that although the Statute provides that the court should expedite such judicial bypass proceedings, the Statute contains absolutely no specific time guidelines nor does it direct the Arizona courts to create such guidelines by rule or otherwise. Also, that although the Statute provides that such proceedings be confidential, it fails to provide a specific confidential procedure (Sup.Complaint para. 12).

The Complaint also alleges that the rules promulgated by the Supreme Court under the predecessor to A.R.S. § 36–2152, if they apply under the new Statute, were and remain constitutionally defective and do not provide a sufficiently expeditious and confidential procedure to protect a minor's rights to prompt judicial relief (Sup.Complaint para. 12, pg. 5).

The Supplemental Complaint further alleges that the requirements of the Statute which provide that a physician may avoid criminal liability by establishing "by written evidence" that he or she "relied on evidence sufficient to convince a careful and prudent person that the representations of the pregnant minor regarding information necessary to comply with the Section are true" places an unduly high burden of proof on providers seeking to defend themselves against civil or criminal liability.

Another challenge to the Statute is the provision that requires an attending physician to certify on the minor's medical records that "on the basis of the physician's good faith clinic judgment" the pregnant minor has a "condition that so complicates her medical condition as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay would create serious risk of substantial and irreversible impairment of major bodily function and there is insufficient time to obtain the required parental consent or judicial authorization." (Sup.Complaint para. 14).

The Defendants have filed a Motion to Dismiss and Motion to Dissolve the Temporary Restraining Order. The Defendants' arguments are as follows:

1.) The Plaintiffs have no standing to challenge the bypass provision;

2.) The Judicial bypass provision is not subject to a facial challenge;

3.) A bypass statute need not contain specific time lines;

4.) There is no requirement that a state bypass law must contain a provision for constructive authorization of the application in case of untimely judicial action;

5.) Whether Rule 102 is still valid is immaterial;[1]

6.) An appeal from a bypass ruling is not constitutionally required;

---

**1.** Rule 102 was passed by the Supreme Court under the old statute to set time limits on appeals from the trial court's decision. It does not set any time limit for the Superior Courts to act.

7.) The confidentiality provision in the bypass provision is constitutional;

8.) The bypass provision's expedition requirement is constitutional and not vague;

9.) The medical emergency exception is constitutional and not vague; and

10.) The "abortion" definition in the Statute is not vague.

## STANDARD OF REVIEW

 A young woman is not beyond the protection of the Constitution merely on account of her minority. *Bellotti v. Baird (Bellotti II)*, 443 U.S. 622, 633, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979). It follows that it is a constitutional liberty of a minor woman to have some freedom to terminate her pregnancy. The Supreme Court has held the undue burden standard as the appropriate means of reconciling the state's interest with a woman's constitutionally-protected liberty interest. *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

 A finding of an undue burden is a determination that a state regulation has a purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose or effect is invalid because the means chosen by the state to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. A statute which, while furthering the state's interest in potential life, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends and is an undue burden, and, is unconstitutional. *Id.*

 In its application of the undue burden standard of review, this Court acknowledges the right of the state to enact regulations to further the health or safety of a woman seeking an abortion and to promote its interest in the potentiality of human life subsequent to viability by proscribing abortions "except where it is necessary, in appropriate medical judgment for the preservation of the life or health of the mother." *Casey*, 505

U.S. at 837, 112 S.Ct. at 2799; (reaffirming *Roe v. Wade*, 410 U.S. 113, 164–65, 93 S.Ct. 705, 732, 35 L.Ed.2d 147 (1973)).

## STANDING

The Defendants argue that the court lacks jurisdiction over the adjudication of the bypass provision because the Plaintiffs have no standing to challenge the provision. Defendants cite *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 558–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) for the standing test: 1) injury in fact; 2) causation; and 3) redressability. Defendants also rely on *Cleveland Surgi–Center v. Jones*, 2 F.3d 686, 688 (6th Cir.1993) (physicians lacked standing to challenge bypass provision where basis of the claim was that state judges wrongly decided the petitions; judicial decisions of state courts are not redressable) *cert. denied*, 510 U.S. 1046, 114 S.Ct. 696, 126 L.Ed.2d 663 (1994).

 There is no merit to the Defendants' position. The Plaintiffs have standing to bring this action and the court has jurisdiction to consider Plaintiffs' facial challenge to the constitutionality of A.R.S. § 36–2152. Medical providers, such as physicians, who provide abortions have standing to represent their patients. *City of Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 440 n. 30, 103 S.Ct. 2481, 2498 n. 30, 76 L.Ed.2d 687 (1983).

 Furthermore, the Plaintiff physicians are subject to potential criminal liability for failure to comply with the requirements of the Statute. *See Planned Parenthood v. Danforth*, 428 U.S. 52, 62, 96 S.Ct. 2831, 2837, 49 L.Ed.2d 788 (1976); *Doe v. Bolton*, 410 U.S. 179, 186–88, 93 S.Ct. 739, 745–46, 35 L.Ed.2d 201 (1973); *Bellotti v. Baird (Bellotti II)*, 443 U.S. 622, 627 n. 5, 99 S.Ct. 3035, 3039 n. 5, 61 L.Ed.2d 797 (1979).

## SPECIFIC TIME LIMITS FOR THE COURTS TO ACT ON THE MINOR's PETITION

Section D of the Statute reads as follows: "Proceedings in the court under this section are confidential and shall have precedence

over other pending matters. The court shall reach a decision promptly and without delay to serve the best interest of the pregnant minor."

Section E reads: "An expedited confidential appeal is available to a pregnant minor for whom the court denies an order authorizing an abortion without parental consent— access to the trial court for the purposes of a petition or motion and access to the appellate courts for purposes of making an appeal from denial of the petition or motion is available 24 hours a day, seven days a week."

■ A state choosing to impose a parental consent requirement for minors must provide an anonymous and expeditious alternative. As a pregnancy advances, time is of the essence in obtaining an abortion. Delaying an abortion may have serious medical consequence. The probability of maternal mortality increases approximately 40 percent for each week of gestation between eight and 20 weeks. Other factors will tend to make time of the essence: delay in initial discovery of the pregnancy, obtaining clinical referrals, initial visits to a clinic for pregnancy tests, and the possibility of second clinical visit to discuss options. (See Doctors Affidavits filed with Application.)

The Ninth Circuit, in *Glick v. McKay*, 937 F.2d 434 (9th Cir.1991), set forth the following requirements:

1.) The procedure must allow the minor to show that she possesses the maturity and information to make her abortion decision, in consultation with her physician, without regard to her parents' wishes";

2.) The procedure must allow the minor to show that, even if she cannot make the abortion decision by herself, the desired abortion would be in her best interest;

3.) The procedure must ensure the minor's anonymity; and

4.) The courts must conduct a bypass procedure with expediency to allow the minor an effective opportunity to obtain the abortion.

*Id.* (citing *Ohio v. Akron Center for Reproductive Health, (Akron II)* 497 U.S. 502, 510–

12, 110 S.Ct. 2972, 2979–80, 111 L.Ed.2d 405 (1990) and *Bellotti II,* 443 U.S. at 643–44, 99 S.Ct. at 3048).

*Glick* involved a Nevada statute which contained no deadline within which the district court had to issue a decree either granting or denying the petition authorizing a physician to perform an abortion without parental notification. As pointed out by the court, the Supreme Court has repeatedly espoused the importance of expediency in the abortion context. *Glick,* 937 F.2d at 440 (citing *Bellotti II,* 443 U.S. at 644, 99 S.Ct. at 3048; *Akron II,* 497 U.S. at 512, 110 S.Ct. at 2980).

Delaying a woman's opportunity to undergo an abortion can create two serious problems: 1) the health risk associated with an abortion increase significantly with delay, and 2) a woman's fundamental constitutional right to seek an abortion gradually yields to the state's interest in potential human life as fetal liability nears. *Glick,* 937 F.2d at 441. "There are few situations in which denying a minor the right to make an important decision will have consequences so grave and indelible." *Id.*

> Yet, an abortion may not be the best choice for the minor. The circumstances in which the issue rises will vary widely. In a given case, alternatives to abortion, such as marriage to the father of the child, arranging for adoption, or assuming the responsibility of motherhood with the assumed support of the family, may not be feasible and relevant to the minor's best interest. Nonetheless, the abortion decision is one that simply *cannot be postponed,* or it will be made with default with far-reaching consequences.

*Glick,* 937 F.2d at 442 (quoting *Bellotti II,* 443 U.S. at 642–43, 99 S.Ct. at 3048).

The Ninth Circuit held that "because time is such a critical factor, relating both to a woman's health and the exercise of her constitutional right to an abortion, .... the Nevada bypass procedure, which [did] not contain a time period within which the state district court must rule on the minor's [ ] petition, ... [was not sufficient] to protect a pregnant minor's constitutional right to an abortion." *Id.*

■ Defendants have not cited a single case, nor has the Court found one, where a court approved a statute which is indefinite as to the time limits within which the court must act on a minor's petition. The general mandate in the statute that courts act "promptly" cannot cure the deficiency where the entire judicial process is devoid of any time limits or deadlines whatsoever. Furthermore, the deficiency effects the viability of the statute's emergency provision.

## STATUTE's EMERGENCY PROVISIONS

■ Pursuant to the Statute, Section F, a doctor may dispense with parental consent and perform an abortion "when the pregnant minor has a condition that so complicates her medical condition as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of major bodily function *and there is insufficient time to obtain the required parental consent or judicial authorization.*" There is no way that a doctor can make this decision the way the Statute is written. Since the Statute contains no deadlines, a doctor will have no way of knowing if there is "insufficient time to obtain the required parental consent or judicial authorization."

Statutes regulating abortions must allow physicians to perform immediate abortions when necessary to avert significant health risks to the woman. *Casey*, 505 U.S. at 879–81, 112 S.Ct. at 2821–23. A physician faced with a minor in need of an emergency abortion must be able to gauge whether the time required to obtain the bypass will put the minor's health at risk. This deficiency renders the Statute unconstitutionally vague and creates an undue burden on the minor's right to abortion by forcing her to continue a pregnancy that would constitute a threat to her health. *Casey*, 505 U.S. at 845–47, 112 S.Ct. at 2804. By failing to provide any deadlines by which the bypass petition must be decided, the physician lacks the necessary time frame upon which to base his determination of whether any "emergency" exists.

## THE "BEST INTEREST" STANDARD

Under A.R.S. § 36–2152(B), when the state court judge determines that the minor is not mature, the judge "shall determine whether the performance of an abortion on her without the consent of one of her parents or her guardian or conservator would be in her best interest and shall authorize a physician to perform the abortion without consent if the judge concludes that the pregnant minor's best interest would be served." This "best interest" standard is, at the very least, vague and confusing.

The Ninth Circuit, in *Wicklund v. Salvagni*, 93 F.3d 567 (1996), addressed this issue. The Court of Appeals upheld the district court which ruled that a Montana statute impermissibly narrowed the constitutional standard by focusing on whether or not parental notification was in the minor's best interest, rather than simply authorizing an abortion when an abortion is in the minor's best interest. The Ninth Circuit affirmed, holding that the statute "impermissibly constricted the meaning of best interest" because it required the state court judge to determine whether notification of the minor's parents was in her best interest and not simply whether an abortion was in her best interest.

■ As pointed out hereinbefore, there are many factors which the Judge must consider in making the determination that an abortion is in the minor's best interest. As worded, A.R.S. § 36–2152(B) places undue emphasis on whether the performance of an abortion without the consent of one of her parents or guardian or conservator would be in her best interest. This impermissibly constricts the meaning of best interest. *Id.* at 570–72.

### DECISION

The Court finds that A.R.S. § 36–2152(B), as written, places an undue burden on a pregnant minor's freedom to terminate her pregnancy and is, therefore, unconstitutional.

In view of the Court's ruling, it is not necessary for the Court to rule on the other issues raised by the parties.