BALDOCK, Circuit Judge,
dissenting.
As of this writing, a woman’s fundamental constitutional right to abort a fetus previability — without “undue interference” from the state — is settled. See Stenberg v. Carhart, 530 U.S. 914, 946, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000) (Stevens, J., concurring) (“[D]uring the past 27 years, the central holding of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), has been endorsed by all but 4 of the 17 justices who have addressed the issue.”). At the same time, Supreme Court Justices remain divided over state regulation of abortion, including regulation pertaining to minors. See H.L. v. Matheson, 450 U.S. 398, 413-14, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (Powell, J., concurring) (noting the divisive nature of questions over state statutes intended to encourage parental involvement in a minor’s decision to have an abortion). In a stream of opinions over the past three decades, the Justices have struggled to articulate meaningful standards for lower courts to apply. See e.g., Planned Parenthood v. Casey, 505 U.S. 833, 950, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (Rehnquist, C.J., dissenting in part) (“[W]hen confronted with state regulation ... [of abortion], the Court has become increasingly more divided[.]”) (citing cases). Justice White accurately predicted the future a quarter century ago: “In Roe v. Wade ... this Court recognized a right to an abortion free from state prohibition. The task of policing this limitation on state police power is and will be a difficult and continuing venture in substantive due process.” Planned Parenthood v. Danforth, 428 U.S. 52, 92, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (White, J., dissenting in part). True to Justice White’s words, state lawmakers continue to test the limits of Roe and courts continue to police those limits with no foreseeable end to the struggle.
Given Supreme Court precedent, I have little quarrel with the legal proposition that a state may not infringe on a woman’s ability, regardless of her age, to obtain an abortion in a timely manner where medically necessary to proscribe a serious health risk. See Court’s Op. at 8-12; *932 Stenberg, 580 U.S. at 930-31, 120 S.Ct. 2597 (state may promote but not endanger a woman’s health when regulating abortion).[1] I do not agree, however, with the Court’s conclusion that the voter initiated and approved Colorado Parental Notification Act, Colo.Rev.Stat. §§ 12-37.5-101 thru 108 (2001) (CPNA), when construed under Colorado state law, necessarily “infringes on the ability of pregnant women to protect their health.”[2] Court’s Op. at 17. Nor do I agree with the Court’s conclusion that the CPNA is unconstitutional in its entirety simply because it may “infringe on the ability of any pregnant woman to protect her health.” Court’s Op. at 14 (emphasis in original). In my opinion, the Court is much too eager to apply its view of Colorado state statutory interpretation to strike on its face, not a single prohibitory statute like that at issue in Stenberg, but a multi-section act directly approved by the voters of Colorado. See Court’s Op. at 17-30. The Court declares the CPNA unconstitutional because it fails to address the availability of emergency medical procedures in the rare instance where a pregnant minor’s health (but not life) is threatened and that minor cannot or does not wish to notify an unknowing parent.[3]
Resolution of the narrow issue in this case, and the possible validity of the CPNA, unquestionably turns on the Court’s application of Colorado state law.[4] *933 Granted the Court’s application of that law might be correct in whole or in part. But the CPNA, in my view, “is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.” Bellotti v. Baird, 428 U.S. 132, 147, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) (internal quotations omitted). Consequently, the Colorado Supreme Court, which has had no occasion to consider application of the CPNA, seems better suited than a federal court for that application in the first instance. Accordingly, I believe the preferable approach at this stage is to abstain from deciding the CPNA’s constitutionality and to certify to the Colorado Supreme Court, pursuant to the certification procedure outlined in Colo. Sup.Ct. R. 21.1., questions of Colorado state law “which may be determinative” of this cause.[5]
In Bellotti, a three-judge district court held a Massachusetts parental consent statute unconstitutional. Because the statute’s constitutionality turned on questions of state law, a unanimous Supreme Court vacated the district court’s judgment and directed the court to certify to the state’s highest court “appropriate questions concerning the meaning of [the statute] and the procedure it imposes.” Bellotti, 428 U.S. at 151, 96 S.Ct. 2857. In abstaining, the Court explained:
It is sufficient that the statute is susceptible of the interpretation offered by [the State], and we so find, and that such an interpretation would avoid or substantially modify the federal constitutional challenge to the statute, as it clearly would. Indeed, in the absence of an authoritative construction, it is impossible to define precisely the constitutional question presented.
Id. at 148, 96 S.Ct. 2857; see also Akron v. Akron Center for Reproductive Health, 462 U.S. 416, 468-69, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (O’Connor, J., dissenting) (arguing that despite the absence of a certification procedure, the Court should have abstained from declaring a parental consent provision of a municipal ordinance unconstitutional); but see Stenberg, 530 U.S. at 945, 120 S.Ct. 2597 (declining to employ a state certification procedure where a Nebraska statute banning “partial birth abortion” outright was not “fairly susceptible” to a “narrowing” construction).[6]
We must assume that the Colorado Supreme Court, if given its rightful opportunity, would seek to construe the CPNA consistent with constitutional requirements. “Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality.” Ohio v. Akron Center for Reproductive Health, 497 U.S. *934 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (internal quotations omitted). The Colorado Supreme Court abides by this rule. In construing a statute chilling the fundamental right of speech, the court recently stated: “If a limiting construction or partial invalidation that confines the statute to sufficiently narrow applications can be applied, the court should construe the statute in light of that limiting construction.” People v. Hickman, 988 P.2d 628, 636 (Colo.1999). This is especially true where a statute’s constitutionality is in question: “A court has a responsibility to apply a limiting construction or partial invalidation if doing so will preserve the statute’s constitutionality.” Id.
Despite this responsibility, the Court side steps the State’s belated but perhaps most forceful argument, namely that Colo. Rev.Stat. § 18-l-703(l)(e)(II) (2001), a part of the Colorado Criminal Code, provides the necessary health exception to the CPNA. See Court’s Op. at 80-32 n. 18. That section, which applies to criminal offenses generally, exempts from criminal responsibility medical personnel performing emergency procedures on minors:
(I) The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:
(e) A duly licensed physician, or a person acting under his direction, may use reasonable and appropriate physical force for the purpose of administering a recognized form of treatment which he reasonably believes to be adapted to promoting the physical or mental health of the patient if:
(II) The treatment is administered in an emergency when the physician reasonably believes that no one competent to consent can be consulted and that a reasonable person, wishing to safeguard the welfare of the patient, would consent.
Given the Court’s insistence to decide the CPNA’s constitutionality, I cannot understand the Court’s decision, based largely on procedural grounds, to shirk its responsibility to come to grips with § 18-1-703(l)(e)(II). To be sure, “this Court does not ordinarily review issues raised for the first time in a reply brief.” Stump v. Gates, 211 F.3d 527, 533 (10th Cir.2000) (emphasis added). But the ordinary rule is subject to exception, and this is no ordinary case. Headrick v. Rockwell Int’l Corp., 24 F.3d 1272, 1278 (10th Cir.1994) (citing Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C.Cir.1992) (“[Tjhere do exist circumstances in which a court may consider, or even raise sua sponte, arguments ignored or left undeveloped in the first round of briefing.”)). A federal court’s decision to declare a state legislative act unconstitutional on its face is most invasive of state sovereignty. Because such a decision extends far beyond the immediate parties, a federal court, in my opinion, should reach such a decision only after the utmost consideration. This seems especially true where the court bases its decision solely upon an arguably erroneous application of state law principles.
The Court states that “[i]t would be unfair to rule on the State’s argument based on § 18-1-703” without providing Plaintiffs an opportunity to respond. Court’s Op. at 31 n.18. Of course, certifying the appropriate state law questions to the Colorado Supreme Court would give Plaintiffs ample opportunity to answer all the State’s arguments. Moreover, because the State has “agreed to refrain from enforcing the [CPNA] until entry of a final *935 non-appealable judgment,” Planned Parenthood v. Owens, 107 F.Supp.2d 1271, 1275 (D.Colo.2000), Plaintiffs stand to suffer no discernible injury if we employ Colorado’s certification procedure.
Without unduly analyzing each of the acceptable possibilities, I believe the Colorado Supreme Court could render a reasonable limiting construction of the CPNA to preserve it consistent with its intended applications. As the district court noted, nothing in the record suggests that Colorado voters in supporting the CPNA initiative “intend[ed] to place a pregnant minor’s health at risk” contrary to the minor’s best interests.[7] See Owens, 107 F.Supp.2d at 1283 n. 21; compare Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 771, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) (“We necessarily conclude that the [Pennsylvania] legislature’s failure to provide a medical-emergency exception ... was intentional.”), overruled in part on other grounds by Casey, 505 U.S. at 870, 882, 112 S.Ct. 2791 (opinion of O’Connor, J.).
In the end, the Court concludes that a saving construction of the CPNA is not “fairly possible.” Court’s Op. at 30. I disagree. I am not convinced that, if called upon to construe the voter initiated and approved CPNA, the Colorado Supreme Court would refuse to narrow its application and construe it in a constitutional manner. Compare Matheson, 450 U.S. at 406-07 & n. 14, 101 S.Ct. 1164 (parental notification law which did not explicitly exempt pregnant minors with emergency health care needs did not give the Court “any reason to assume that a minor in need of emergency treatment will be treated in any way different from a similarly situated adult”); Rust v. Sullivan, 500 U.S. 173, 195, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (rejecting a facial challenge to federal regulations barring a federal project from referring women to abortion providers where the regulations did not explicitly exempt cases of “imminent peril” to the mother’s life).
Today, the Court prematurely and perhaps unjustifiably thwarts the will of the Colorado electorate. Due to the lack of reasonable certainty as to how the CPNA will operate in its application or how the CPNA interacts with other Colorado laws, legislative or judicial, “our scrupulous regard for the rightful independence of state governments counsels against unnecessary [and premature] interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system.” Akron, 462 U.S. at 470, 103 S.Ct. 2481 (O’Connor, dissenting).
Accordingly, I dissent.

. In Casey, Justice Stevens explained the existing legal rationale for "why the State’s obligation to protect the health of the mother must take precedence over any duty to the unborn." (emphasis in original).
The Court in Roe carefully considered, and rejected, the State’s argument that' a fetus is a "person” within the language and meaning of the Fourteenth Amendment.... In short, the unborn have never been recognized in the law as persons in the whole sense. Accordingly, an abortion is not the termination of life entitled to Fourteenth Amendment protection. From this holding, there was no dissent. Indeed, no Member of the Court has ever questioned this fundamental proposition. Thus, as a matter of federal constitutional law, a developing organism that is not yet a "person" does not have what is sometimes described as a "right to life.” This has been and, by the Court’s holding today, remains a fundamental premise of our constitutional law governing reproductive freedom.
Casey, 505 U.S. at 912-14, 112 S.Ct. 2791 (Stevens, J., concurring in part) (internal quotations, citations, and footnote omitted).

. Colorado voters reportedly approved the CPNA at a general election held on November 3, 1998, by a vote of 708,689 to 582,102, or 55% to 45%.

. Section 12-37.5-106(2)(b) of the CPNA provides an affirmative defense to a criminal charge under the CPNA if ”[t]he abortion was performed to prevent the imminent death of the minor child and there was insufficient time to provide the required notice.” The district court briefly took issue with subsection (2)(b), asserting "an affirmative defense is significantly different from an exception to the reach of a criminal statute.” Planned Parenthood v. Owens, 107 F.Supp.2d at 1271, 1283 (D.Colo.2000). Aside from the case where an exception to a penal statute constitutes an element of the offense, however, an exception operates the same as an affirmative defense. See United States v. Prentiss, 256 F.3d 971, 978-80 (10th Cir.2001) (en banc); id. at 986-89 (Baldock, J., dissenting in part).

.Given Supreme Court precedent discussing the constitutional demands for parental notification laws, Plaintiffs' remaining arguments as to why the CPNA is unconstitutional in whole or in part, see Court's Op. at 7 n. 5, at least initially do not appear nearly as forceful as the health exception argument we address today. Indeed, the district court recognized that "parental notification statutes ... have generally passed constitutional muster.” Owens, 107 F.Supp.2d at 1279; see also Lambert v. Wicklund, 520 U.S. 292, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (per curiam) (collecting cases); Hodgson v. Minnesota, 497 U.S. 417, 448, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (opinion of Stevens, J.) (“We think it clear that a requirement that a minor wait 48 hours after notifying a single parent of her intention to get an abortion would reasonably *933 further the legitimate state interest in ensuring that the minor’s decision is knowing and intelligent.”).

. Colo. Sup.Ct. R. 21.1 provides that a federal court, upon its own motion, may certify questions of state law "which may be determinative of the cause then pending in the certifying court and as to which to the certifying court there is no controlling precedent in the decisions of the [Colorado] Supreme Court.”

. In this case, the district court inquired into the possibility of certifying state law questions to the Colorado Supreme Court under Colo. Sup.Ct. R. 21.1, but the parties were unreceptive. See Owens, 107 F.Supp.2d at 1275. Nevertheless, where appropriate, a federal court may consider abstention sua sponte. See Bellotti, 428 U.S. at 143-44 n. 10, 96 S.Ct. 2857; Colo. Sup.Ct. R 21.1(b). Citing the equitable nature of abstention, the Court in Bellotti noted "the fact that the full arguments in favor of abstention may not have been asserted in the District Court does not bar this Court’s consideration of the issue.” Bellotti, 428 U.S. at 143 n. 10, 96 S.Ct. 2857.

. The Court recognizes that the Colorado Children’s Code, specifically Colo.Rev.Stat. § 19-1-104(3) (2001) (CCC), “broadly authorizes the provision of medical services on an emergency basis, as required only by the 'best interest’ of the child upon authorization by a judge.” Court's Op. at 24. The Court, however, rejects the possibility that the CPNA may be construed in pari materia with the CCC despite the fact that reflected in both the CPNA and CCC is the judgment of the Colorado electorate that these laws are in the best interest of their youth.