OPINION
{¶ 1} Jane Doe, an unmarried pregnant minor, appeals from an order of the trial court denying her petition for authorization to consent to an abortion, pursuant to R.C. 2919.121. Doe contends that the trial court erred by failing to find that she is sufficiently mature and informed to intelligently decide whether to have an abortion without the notification of her parent, guardian or custodian, and by not finding that it is in her best interest to have an abortion without the notification of her parent, guardian, or custodian. Doe also contends that the trial court abused its discretion by failing to issue an immediate decision, as required by R.C. 2151.85.
 {¶ 2} Based upon our review of the record, we conclude that the trial court erred by failing to find that Doe is of sound mind, and has sufficient intellectual capacity to consent to an abortion. Consequently, the judgment of the trial court is Reversed, and judgment is entered in Doe's favor. In view of this disposition of Doe's appeal, we find it unnecessary to determine whether it is in Doe's best interest for her to have an abortion without the notification of her parent, guardian, or custodian, and we also find it unnecessary to determine whether the trial court abused its discretion by failing to issue an immediate decision.
 I {¶ 3} At the time of the hearing in the trial court, Jane Doe had just turned seventeen. She commenced this proceeding by filing a petition in the trial court alleging that she is of sound mind and has sufficient intellectual capacity to consent to an abortion, and also that the trial court should find that an abortion is in her best interests. She avers that she is pregnant, that she is unmarried, and that she wishes to have an abortion, having been fully informed of the risks and consequences of an abortion.
 {¶ 4} Following a hearing, the trial court rendered a decision denying her petition, finding that Doe "is not sufficiently mature and well enough informed to make the decision to have an abortion without notification of her parents." The trial court did not address Doe's second, independent basis for her petition, which is her allegation that an abortion is in her best interests.
 {¶ 5} From the denial of her petition, Doe appeals.
 II {¶ 6} Doe asserts two assignments of error, as follows:
 {¶ 7} "The trial court abused its discretion (1) by not finding that jane doe was sufficiently mature and well enough informed to intelligently decide whether to have an abortion without the notification of jane doe's parent, guardian, or custodian; (2) by not finding that it was in jane doe's best interest for jane doe to have an abortion without the notification of her parent, guardian, or custodian.
 {¶ 8} "The court abused its discretion by failing to issue an immediate decision as required by ohio revised code 2151.85."
 {¶ 9} R.C. 2919.121 makes it unlawful to perform an abortion upon a pregnant minor unless the attending physician has secured the informed written consent of the minor and one parent, guardian or custodian; the minor is emancipated and the attending physician has received her informed consent; or an order of a trial court has been obtained in accordance with R.C.2919.121(C). "If the court finds that the minor is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, the court shall grant the petition and permit the minor to consent to the abortion." R.C.2919.121(C)(3).
 {¶ 10} Doe applied for an order of the trial court permitting her to consent to an abortion. She based her petition both upon the ground that she is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, and upon the additional, independent ground that an abortion is in her best interests.
 {¶ 11} The trial court found that Doe is not sufficiently mature and well enough informed to decide intelligently whether to have an abortion, and denied her petition. The trial court did not address Doe's second, independent ground for her petition — her allegation that an abortion is in her best interests.
 {¶ 12} R.C. 2505.073 provides for an appeal from the denial of a petition for an order permitting a minor to consent to an abortion. These appeals are unusual, in that there is no adversary proceeding in the trial court, or in the court of appeals. The expedited nature of the proceedings leaves no opportunity for an applicant to request findings of fact and conclusions of law. Furthermore, it is clear that the General Assembly has intended, by its enactment of R.C. 2505.073, that a court of appeals to whom an appeal is taken should review the merits of the trial court's ultimate finding on the maturity issue. Indeed, it has been plausibly asserted that R.C. 2505.073
does not contemplate a reversal upon any procedural grounds short of the ultimate merits of the case.[1]
 {¶ 13} If the General Assembly's charge to the courts of appeals of Ohio to review the merits of determinations by trial courts under R.C. 2151.85 is to have any meaning at all, the extent to which courts of appeals normally presume regularity in the trial court and the extent to which courts of appeals normally defer to a trial court's determination of credibility must be curtailed to some extent. The appropriate test would seem to be whether, when the record is examined as a whole, the reviewing court can find any rational basis for the trial court's failure to find that the applicant is sufficiently mature. If the reviewing court can see a rational basis for the trial court's conclusion, then the trial court's decision is within its discretion; otherwise, the trial court's decision constitutes an abuse of discretion.
 {¶ 14} Based upon our review of the record in the case before us, we conclude that Doe met her burden of proof, and that it could not reasonably be concluded, from this record, that she failed to prove, by clear and convincing evidence, that she is sufficiently mature and well enough informed to decide whether to have an abortion without first notifying her parents.
 {¶ 15} Doe testified that she and her boyfriend used a contraceptive, but that it failed. Doe testified that she achieves mostly A's and B's in school, with some C's. Doe offered in evidence a transcript of her grades to corroborate this testimony. It reflects one grade of A+, two B's, one B-, one C and one C-. She testified that she only missed two days of school for the whole year, and had not been tardy.
 {¶ 16} Doe indicated her understanding of the nature of the judicial proceeding that she had initiated, by her petition.
 {¶ 17} Doe actually had a hypothetical discussion with her mother, in which they discussed what would happen if Doe were to become pregnant. Doe testified that her mother told her that she would have to carry the baby to term, and would have to raise the child as her own. Doe testified that her mother expressed strong feelings on this subject. At the time of this conversation, Doe suspected that she was pregnant, but, as far as Doe's mother was concerned, the conversation was entirely hypothetical.
 {¶ 18} Doe testified that she does not talk to her father "about things like that." She testified that her father is "totally oblivious that I'm even sexually active, so he'd be totally shocked if he were to find out."
 {¶ 19} Doe assists her mother in her business on weekends, and does so without supervision. In this connection, she handles money, and is trusted to do so.
 {¶ 20} Doe testified that she plans to go to college, and graduate school. She testified that raising a child "would make it almost impossible for me to keep my grades up while I'm in high school, let alone when I'm going to take college courses."
 {¶ 21} Besides Doe's testimony concerning her mother's views, expressed hypothetically, concerning giving a child up for adoption, Doe testified that she had reservations whether she could go through with adoption, having carried a baby to full term.
 {¶ 22} Doe has discussed her situation with her boyfriend, and her boyfriend's mother. She obtained an information packet from the Women's Clinic in Dayton, and read all of the flyers, leaflets and pamphlets in the packet. She testified that she was familiar with what abortion entails, and that she understands the risks of having an abortion, which she detailed for the judge. Concerning those risks, Doe testified as follows:
 {¶ 23} "Q. And in light of those risks, have you weighed those risks against what you believe to be in your best interest?
 {¶ 24} "A. Yes. I feel that those risks are well — they're in a small percentage of women. I mean, I understand it could happen, but I'm willing to take that chance to save what I might have for a future and for my future children. I'm positive I'll be able to give them a better life when I'm older and more mature.
 {¶ 25} "Q. Now, speaking of children in the future, you do hope to be able to still conceive children later in your life?
 {¶ 26} "A. Yes.
 {¶ 27} "Q. Under what circumstances do you believe that — that a child should be raised?
 {¶ 28} "A. After college, you should possibly have a stable home and marriage to have the child to be able to grow up in a home that's not broken.
 {¶ 29} "Q. Okay. Is that important to you that your child be reared by both parents?
 {¶ 30} "A. Yes.
 {¶ 31} "Q. Do you think that would happen at this point in time in your life?
 {¶ 32} "A. Being so young I'm not sure that we could handle the strain of raising a baby on our own at how young we are.
 {¶ 33} "Q. And you live in two separate residences at this point in time?
 {¶ 34} "A. Yeah.
 {¶ 35} "Q. Okay, all right. Let me see, have you discussed this specifically with any type of counselor or mentor, or anyone besides your boyfriend's mother?
 {¶ 36} "A. Yes. I talked to my counselor at my school and the GRADS teacher at my school that teaches about pregnancy and adoption, abortion.
 {¶ 37} "Q. And were they informative? Did they help you in trying to reach your decision?
 {¶ 38} "A. Yes. The teacher that I talked to informed me that of all the risks and of all the options I might be able to take.
 {¶ 39} "Q. Now, you're aware that there are risks involving carrying a child to full term as well, right?
 {¶ 40} "A. Yes.
 {¶ 41} "Q. Have you considered those in trying to make your decision?
 {¶ 42} "A. Yes. That's what weighed — they kind of evened out the risks of getting an abortion and because it, I mean, there is risks for both sides. I mean, you just have to take the risks either way."
 {¶ 43} Doe also discussed her situation with the guardian ad litem appointed in her case. She testified that the guardian ad litem had been helpful to her. At the conclusion of the hearing, the guardian ad litem made the following statement:
 {¶ 44} "I did speak to this young lady at length on Friday and I believe that the time I talked to her that she seemed to have a pretty clear understanding of what her situation was. While I don't personally agree with the steps she's making, I believe that she has given this a great deal of thought. I believe that she has looked at it from a relatively mature point of view, and has made the decision that she believes to be in her best interests, and I would concur with that at this time, your Honor."
 {¶ 45} In its decision denying the petition, the trial court was dismissive of Doe's testimony that she had received, and had considered, information concerning her alternatives:
 {¶ 46} "The Petitioner indicated that she had received some written information from a women's clinic in Dayton and had read the material. She indicated that those pamphlets provided answers to all of her questions and she had no lingering questions or concerns about the medical procedure she requests. The Petitioner did recite some of the horrors associated with abortions, but cavalierly dismissed the health risks associated with that procedure to she or her unborn child.
 {¶ 47} "The Petitioner further offered a belief that she should only bring a child into the world after she completed college and was married, when both parents were present in the home. She wasn't sure that she and the father could handle the stress at this time in their lives. The Petitioner indicated she had spoken to a counselor at school about something or other, but offered no specific information as to what was discussed, how long the discussion took place or even that the counselor was qualified and capable to have a meaningful discussion concerning an abortion. The Petitioner indicated that she was scared at this time in her life and that this accidental pregnancy has caused great stress to her. She believes she was 11 weeks pregnant, but was not entirely certain of that.
 {¶ 48} "The Petitioner indicated that she has had no experience caring for an infant child or even for young children. She indicated no expertise in childbirth, the needs of a child, the time and effort necessary to care for a child or the like. Additionally, the Petitioner offered no evidence that she had spoken to anyone who had had an abortion, offered no evidence as to any meaningful discussion of the cost, consequences and effect of an adoption, and certainly offered no evidence to convince the Court that she had made any meaningful inquiry into any option besides ridding herself of her unwanted pregnancy.
 {¶ 49} "THE COURT FINDS the Petitioner is not sufficiently mature and well enough informed to make the decision to have an abortion without notification of her parents. It is beyond comprehension that a minor child contemplate such a life-changing experience without a reasonable inquiry into the choices, options and consequences of her actions. The Court would well hope that every female seeking an abortion would have the opportunity to truly understand the consequences of her actions. This Petitioner does not evidence sufficient or enough maturity, intelligence and experience to convince the Court that she has the capacity to consent to an abortion."
 {¶ 50} Based upon our review of the evidence, we cannot find a rational basis for the trial court's conclusion that Doe is not sufficiently mature and well enough informed to make this momentous decision. As in In re: the Complaint of Jane Doe
(April 24, 1987), Clark App. No. 97-CA-35, we conclude that it is not appropriate to fault the petitioner for having failed to discuss her situation with a wider range of people, especially since that would likely defeat the confidentiality that permeates the statute and proceedings thereunder. It appears that Doe considered the alternatives of having an abortion, placing her baby up for adoption, or raising the baby as her own. If there are other alternatives, we are not aware of them.
 {¶ 51} From the testimony in the record, it appears to us that Doe gave careful consideration to all of these options. She recognized that she would have difficulty placing the child for adoption, and that her mother's opposition to this course would make it even more difficult. She recognized the likelihood that she would have to raise the child as a young, single parent, with limited prospects, and she recognized all the difficulties that would entail, both for her and for the child. Finally, she did indicate that she was aware of the risks associated with abortion.
 {¶ 52} From this case, and other cases, we conclude that the trial judge would never regard a decision to have an abortion as intelligent and mature. In expressing the "hope that every female seeking an abortion would have a opportunity to truly understand the consequences of her actions," it appears that the trial court is expressing the view that no woman, of any age, who "truly understands" the consequences of her actions could make a rational decision to have an abortion.
 {¶ 53} We understand that decisions involving abortion involve deeply held and deeply cherished beliefs involving the sanctity of human life. From the scheme of section 2151.85, however, it is clear that the General Assembly has charged trial judges and appellate judges concerned with these issues to decide simply whether the minor applicant is sufficiently intelligent and mature to make this decision for herself, not whether it is a decision with which the judge concurs, or even whether it is a decision that the judge finds comprehensible.
 {¶ 54} Based upon our review of the evidence in this record, Doe had the requisite maturity and intelligence, and was sufficiently informed, to make this decision that will, as she clearly recognizes, have a great impact upon her life. Accordingly, we conclude that the trial court abused its discretion when it failed to find, by clear and convincing evidence, that Doe had the requisite maturity and intelligence to make this decision.
 {¶ 55} Because Doe's having the requisite maturity and intelligence to make the decision on her own is an independent basis for granting her the requested relief, we find it unnecessary to consider her alternative argument that that the trial court abused its discretion in failing to find that having an abortion is in her best interests. We also find it unnecessary to consider Doe's second assignment of error — that the trial court abused its discretion by failing to decide her petition immediately.
 {¶ 56} Doe's First Assignment of Error is sustained. Doe's Second Assignment of Error is overruled, as moot.
 III {¶ 57} Doe's First Assignment of Error having been sustained, the judgment of the trial court is Reversed, and an order of this court has been entered authorizing her to consent to the performance or inducement of an abortion without first notifying her parent, guardian, or custodian.
 {¶ 58} If appellant believes that this opinion may disclose her identity, appellant has the right to appear and argue at a hearing before this court. appellant may perfect this right to a hearing by filing a motion for a hearing within fourteen days of the date of this opinion.
 {¶ 59} The clerk is instructed that this opinion is not to be made available for release until either of the following: (a) twenty-one days have passed since the date of the opinion and appellant has not filed a motion, or (B) if appellant has filed a motion, after this court has ruled on the motion.
Brogan and Wolff, JJ., concur.
[1] Remarks of Rita S. Eppler, Esq., Chief, Federal Litigation Section, Office of the Attorney General, State of Ohio, at the Ohio Appellate Judges' Seminar in Cincinnati, Ohio, May 16, 1991. Ms. Eppler successfully defended the constitutionality of the statute in oral argument in Ohio v. Akron Reproduction HealthCenter (1990), 111 L.Ed.2d 405.