ROGERS, Circuit Judge,
concurring.
I concur in Parts I, III-B, and IV of the majority opinion, and entirely in the result. I write separately concerning the single petition rule because, as a categorical limitation on whether an abortion is permitted at all, the rule defies application of the “large fraction” test. The Supreme Court has used the “large fraction” test instead to examine state regulation of how an abortion is to be performed or of what information should be given a woman who is legally allowed to get an abortion. It is not necessary in this case to apply the test to the single petition rule, however, because Supreme Court holdings regarding judicial bypass procedures directly compel invalidation of that rule.
Requiring a minor to get parental consent for an abortion, without the possibility of an administrative or judicial bypass procedure that meets defined standards, unduly burdens the minor’s right to an abortion. This is the holding of Bellotti v. Baird, 443 U.S. 622, 647-51, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) (“Bellotti II ”), reaffirmed by the Supreme Court in many subsequent cases. See, e.g., Lambert v. Wicklund, 520 U.S. 292, 295, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (per curiam); Planned Parenthood v. Casey, 505 U.S. 833, 895, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); Ohio v. Akron Ctr. for Reproductive Health, 497 U.S. 502, 510-13, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990). To survive constitutional challenge, a law requiring parental consent for a minor’s abortion must contain a procedure that (1) allows the minor to bypass the consent requirement if she establishes that she is mature enough and well enough informed to make the abortion decision independently, (2) allows the minor to bypass the consent requirement if she establishes that the abortion would be in her best interests, (3) ensures the minor’s anonymity, and (4) provides for expeditious bypass procedures. See Lambert, 520 U.S. at 295, 117 S.Ct. 1169.
The Supreme Court in Bellotti II stated that a minor possesses an absolute right to a proceeding where she may establish her entitlement to a bypass:
A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents’ wishes; or (2) that even if she is not able to make this *375 decision independently, the desired abortion would be in her best interests.
Bellotti II, 443 U.S. at 643-44, 99 S.Ct. 3035 (emphasis added). The Bellotti II Court explained that every minor must have the opportunity to establish that she should not have to seek parental consent based on her current level of maturity or her current best interests:
We conclude, therefore, that under state regulation such as that undertaken by Massachusetts, every minor must have the opportunity' — if she so desires — to go directly to a court without first consulting or notifying her parents! If she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent. If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion. If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation.
Id. at 647-48, 99 S.Ct. 3035.
Under a fair reading of Bellotti II, a minor’s right not to seek parental consent depends on the current level of her maturity or interest in abortion. See id. at 647-51, 99 S.Ct. 3035. Bellotti II also provides that this right must be protected by judicial proceedings. See id. But if the right is to be adequately protected, such proceedings must account for material changes in the petitioner’s state after a first, unsuccessful bypass proceeding. Accordingly, under Bellotti II, the single petition rule is facially invalid because, after a failed first petition, the rule does not permit a judge to evaluate the petitioner’s current maturity or interest in abortion in light of new developments. When a minor alleges that her current state has materially changed, an older and potentially incorrect determination will in identifiable cases nullify Bellotti II’s command that a minor’s current state be determinative of her request for a bypass. Ohio must in some manner stand ready to evaluate minors’ claims of appropriate changed circumstances. Such minors cannot constitutionally be cut off from all recourse in the manner accomplished by the single petition rule. Therefore, the single petition rule violates the right of second petitioners to some judicial or administrative process that evaluates their claims of changed circumstances.
While the question of successive bypass petitions was not before the Bellotti II Court, the Court’s rationale directly compels the result in this case. The Bellotti II Court founded its determination of the law concerning parental consent and judicial bypass upon a careful and nuanced balancing of constitutional interests. On the one hand were the need to preserve the constitutional right to an abortion and the unique nature of the abortion decision. See id. at 639-44, 99 S.Ct. 3035. On the other hand were “the particular vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.” Id. at 634, 99 S.Ct. 3035. These considerations preclude the single petition rule just as they led to a judicial bypass requirement in the first place in Bellotti II. Indeed, the Bellotti II Court expressly contemplated that a judicial bypass procedure would be available in later stages of pregnancy. See id. at 651 n. 31, 99 S.Ct. 3035. The state has not distinguished Bellotti II by identifying any way in which the single petition rule fur *376 thers the interests of protecting vulnerable minors, making up for their inability to make mature decisions, or furthering the parental role, other than simply by curtailing the availability of judicial bypass for minors with late-arising bases for a judicial bypass.
Instead, the single petition rule is said to avoid the possibility of a minor’s “refiling throughout her pregnancy until she fords a judge who will grant her petition.” Appellees’ Br. at 47.[1] This court does not need to decide whether a state may require minors to direct their second or successive bypass petitions to the same judge to avoid judge shopping, or require a higher burden of proof for successive petitions to limit refiling. These issues are not before us because the single petition rule does much more than limit judge shopping and unlimited refiling. Instead, it forbids a judicial bypass where one has been sought unsuccessfully before in the same pregnancy, regardless of a change in circumstances. Such a prohibition is inconsistent with the holding and reasoning of Bellotti II, and thus constitutes an undue burden on a minor’s right to an abortion. Casey, which sets the standard that we are bound to apply in abortion cases, explicitly reaffirmed the Bellotti II holding. See 505 U.S. at 895, 899, 112 S.Ct. 2791. Under Bellotti II a minor is entitled to seek a judicial bypass in the later stages of pregnancy, and none of the constitutional foundations for this decision warrants an exception so distantly related to the constitutional policies furthered by that decision. The conclusion is inescapable that the single petition rule runs afoul of Bellotti II, which continues to bind us.
The rationale of Bellotti II is of sufficiently direct applicability to the single petition rule at issue in this case that it is not necessary for us to become entangled in the meta-mathematical niceties of whether a “large fraction” of a relevant group is denied the right to an abortion. Indeed, the “large fraction” analysis contested by the parties is of questionable assistance in resolving the issue presented in this case. The question in this case is not the constitutionality of some procedural hurdle imposed as part of the bypass procedure, but rather the constitutionality of a categorical limit on the availability of the bypass procedure to certain minors. No matter what the circumstances, a minor who has previously been denied a judicial bypass may not obtain such a bypass during the remainder of the same pregnancy.
In evaluating the constitutionality of such a provision, the inquiry cannot be simply restated as whether “in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman’s choice to undergo an abortion.” Such a standard may provide analytic clarity when the challenge is to a type of abortion procedure, where the question is whether the right to an abortion is sufficiently preserved by the availability of other methods. See, e.g., Sten-berg v. Carhart, 530 U.S. 914, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000). The “large fraction” analysis may also make sense where the question is whether the requirements of the judicial bypass procedure are so onerous as to defeat its purposes and thereby unduly burden the minor’s right to an abortion. See, e.g., Memphis Planned Parenthood, Inc. v. Sundquist, 175 F.3d 456 (6th Cir.1999). But where the issue is a categorical exception to the availability of a bypass procedure, the “large fraction” analysis becomes so manipulable as to lose its logical usefulness. Too much depends *377 on the arbitrary determination of what the denominator is.
Opponents of the categorical exception will simply argue that the denominator is the persons precluded by the exception, leading to a large fraction of one. Thus plaintiffs in this case argue that the denominator consists of “all women who are denied a bypass and who later discover medical and other information causing them to renew their pursuit of an abortion.” Appellants’ Reply Br. at 2. As the district court noted in its order denying CWS’s motion for a stay pending appeal, “[ijmplicit in Plaintiffs’ argument is a contention ... that the only relevant group in considering whether a regulation creates an undue burden is those women who are actually foreclosed from obtaining an abortion.” Any plaintiff so defining the denominator could automatically show a fraction of one (i.e., one-hundred percent), and thereby invalidate any categorical exception to the availability of a bypass procedure.
Defenders of the exception, on the other hand, must argue a larger denominator, some class of abortion-seeking women that also includes persons not precluded. Thus defendants in this case argue that the denominator should include all women who are initially denied bypasses, regardless of circumstances that might obviate the need for a later bypass. In the absence of evidence that a large portion of minors initially denied a bypass will need one later, defendants argue that the relevant fraction is small. In contrast, but to a similar result, the district court at one point considered the denominator to be minors whose need for a judicial bypass arises at a later point during pregnancy, regardless of whether a bypass has been sought previously. Cincinnati Women’s Servs., Inc. v. Taft, — F.Supp.2d at-, 2005 U.S. Dist. LEXIS 23015, at *49. The district court reasoned that “it is only speculation that a large fraction of minors who develop fetal anomalies in the second trimester will have already filed a petition for a bypass of parental consent.” Id. at -, 2005 U.S. Dist. LEXIS 23015, at *48. The difficulty with these broader-denominator analyses is that they are in some tension with the idea that “[tjhe proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.” Casey, 505 U.S. at 894, 112 S.Ct. 2791; Women’s Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 194-97 (6th Cir.1997). Where there is a categorical exception to the availability of a judicial bypass, it is arguably somewhat artificial to say that those outside the category are within the group for whom the law is a restriction.
Thus, outside the context of an abortion law that limits the types of abortions, or imposes procedural hurdles to a judicial bypass, a total preclusion for a defined category of cases defies “large fraction” analysis. In this context the district court’s observations about the indeterminacy of the large fraction test are particularly compelling:
The “large fraction” standard enunciated in Casey by nature invites the courts and the parties to engage in a number-crunching exercise to assess the impact of an abortion regulation. The parties have tried to do so here. Nevertheless, stating that a “large fraction” constitutes a substantial obstacle is not the same thing as defining a “large fraction.” Because the Supreme Court instructs that the constitutional analysis should focus on only those women for whom the restriction is actually relevant, Casey, 112 S.Ct. at 2829, the argument devolves to which group of women is properly considered the numerator and which group of women is properly eon- *378 sidered the denominator. Even if a court properly identifies the numerator and denominator, it still must decide whether the resulting fraction is “large.” Again, the Casey Court provides no real guidance. This Court’s research has not developed any decisions in which the courts which have successfully applied, or have even attempted to apply, the large fraction test.
Taft, — F.Supp.2d at -, 2005 U.S. Dist. LEXIS 23015, at *10-11 (footnote omitted).
Indeed, wooden application of a pure “large fraction” analysis would lead to the following anomaly. Suppose a state law precluded a judicial bypass for persons who had traveled to Fiji in the previous three months. The number of such persons in the state who needed a judicial bypass would be a tiny fraction of any relevant group, other than the group of persons who need a judicial bypass who have been to Fiji. Yet it is hard to imagine that the Supreme Court would uphold such a limit under a “large fraction” analysis. On the other hand, there may be categorical limitations on the availability of a judicial bypass that would not be an undue burden on the right to an abortion. Although Bellotti II was handed down more than a decade before Casey, Justice Powell’s opinion in Bellota II explicitly applied an “undue burden” test, albeit without using any “large fraction” analysis. 443 U.S. at 640, 647-48, 99 S.Ct. 3035. The opinion cannot fairly be read to preclude any type of categorical limitation on the availability of a judicial bypass. Such a reading, unnecessary today, would be an overly formal and artificial application of a “large fraction” analysis that makes sense only in other contexts.

. The state's brief however concedes that "[t]he evidence established that second bypass petitions under the prior law were extremely rare.” Appellees’ Br. at 18.