KLEINFELD, Senior Circuit Judge,
concurring:
The current state of the law compels me to concur.
Arizona defends the statute on two grounds: that the risk to pregnant women is considerably greater after 20 weeks gestation, and that fetuses feel pain at least by 20 weeks. The State has presented substantial medical evidence to support its legislative findings on both points. The very undeveloped record affords no basis for rejecting these propositions. But they do not suffice to justify the statute in the current state of constitutional law. Were the statute limited to protecting fetuses from unnecessary infliction of excruciating pain before their death, Arizona might regulate abortions at or after 20 weeks by requiring anesthetization of the fetuses about to be killed, much as it requires anesthetization of prisoners prior to killing them when the death penalty is carried out.[1] Gonzales v. Carhart similarly sug *1232 gested that if a particularly inhumane abortion procedure, removing the child from the uterus intact and then killing it after it had left the uterus and entered the vaginal canal, were “truly necessary in some circumstances, it appears likely an injection that kills the fetus is an alternative.” [2]
The plaintiffs argue that some extremely serious birth defects cannot be detected until after 20 weeks. If that were all that were problematic about the statute, we could apply the doctrine of constitutional avoidance, and read the statutory phrasing to permit post-20 week abortions for serious fetal anomalies. “The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.”[3] The statutory phrase “serious risk of substantial and irreversible impairment of a major bodily function”[4] could, albeit with some strain, be read to mean impairment of the fetus’s bodily functions. Even if not, birth of a severely deformed child is highly likely to impair all of a mother’s bodily and mental functions for the rest of her life, because of the extraordinary burdens the child’s disabilities and illnesses will likely cause a loving mother to suffer. A hellish life of pain may be likely for both mother and child, in the case of the birth defects described in plaintiffs’ affidavits. A prohibition on abortion “would be unconstitutional ... if it subjected women to significant health risks.”[5]
But plaintiffs do not limit their challenge to such cases, they just use them as emotionally appealing anecdotes for why abortions may be desirable after 20 weeks. Because their challenge is facial, not an as-applied challenge involving specific birth defects, our decision cannot be based only on cases involving severe birth defects undetectable until the 20 to 23 week period.
The State argues that we ought to reject this facial challenge and await an as-applied challenge. The State correctly argues that the challengers, in a facial challenge, must show that there can be “no set of circumstances ... under which the Act would be valid.”[6] This is why plaintiffs are not entitled to prevail in this facial challenge case by showing that in some cases, such as the gross fetal deformity not detectable until after 20 weeks, the statute poses an “undue burden.”
Because this is a facial challenge, we have to consider the opposite question, whether there can be any case in which the burden is not “undue.” To do so, we must hypothesize cases in which the statutory “burden” on abortion might be less obviously troubling. So let us suppose that the statute allows abortions on fetuses that are perfectly normal, as most are, and that the reason for the mother’s decision to obtain a late abortion is that her partner, upon noticing her previously undisclosed *1233 pregnancy, pressures her to do so. The question we must answer in this facial challenge case is whether a state may prohibit a post-20 week but pre-viability abortion where the mother’s choice results not from detection of a likely birth defect, not from health risks to the fetus or the mother, but from her decision made in the context of the ordinary pressures of life. Such cases probably occur in substantial numbers, because ambivalence, moral strain, economic strain, and relationship strain may sometimes accompany pregnancy-
What controls this ease is that the parties do not dispute that the 20-week line Arizona has drawn is three or four weeks prior to viability. Defendants do not argue that the 20 to 23 or 24 week fetuses protected by the statute are viable, and offer no evidence to that effect. We are bound, in this particular case, by the absence of any factual dispute as to whether the fetuses to be killed between gestational ages 20 and 23 or 24 weeks are viable. The decision in this ease cannot, of course, establish the factual medical question of whether they are viable, because non-viability is the underlying factual assumption of both parties in today’s case. For this case, Arizona concedes non-viability.
Viability is the “critical fact” that controls constitutionality.[7] That is an odd rule, because viability changes as medicine changes. As Planned Parenthood v. Casey noted, between Roe v. Wade[8] in 1973 and the time Casey was decided in 1992, viability dropped from 28 weeks to 23 or 24 weeks, because medical science became more effective at preserving the lives of premature babies.[9] The briefs make good arguments for why viability should not have the constitutional significance it does, but under controlling Supreme Court decisions, it does indeed have that significance. And even though medical science for premature babies may advance to where they are viable three or four weeks earlier, Arizona does hot claim that science has done so.
Thus this case has to be decided on the assumption that the statute applies to nonviable fetuses, and that the statute before us prohibits abortions of non-viable fetuses past 20 weeks of gestation except for medical emergencies. We evaluate whether that prohibition is, under Casey, an “undue burden.” The woman who does not have a “medical emergency” cannot obtain an abortion after 20 weeks from an Arizona physician. The question for us is whether the current state of constitutional law prohibits the states from imposing that restriction. It does.
Though Casey was a plurality opinion leaving some room for interpretation,[10] a majority of the Supreme Court in Gonzales spoke clearly, albeit partially in dicta,[11] as to the current state of the law. Here are several propositions of law by which, under Casey and Gonzales, we are bound:
1. “[T]he government has a legitimate and substantial interest in preserving and promoting fetal life”;[12]
2. “Before viability, the State’s interests are not strong enough to support a *1234 prohibition of abortion or the imposition of a substantial obstacle”;[13]
3. There is a constitutional “right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State”;[14]
4. “Casey rejected both Roe’s rigid trimester framework and the interpretation of Roe that considered all previability regulations of abortion unwarranted”; [15]
5. “Before viability, a State may not - prohibit any woman from making the ultimate decision to terminate her pregnancy”; [16]
6. An “undue burden,” prohibited by Casey even though less than an absolute prohibition, exists if a “regulation’s purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability”; [17]
7. Gonzales accepts as appropriate government objectives prohibiting inhumane procedures that “coarsen society,” recognizing that a government may consider “effects on the medical community,” and “may use its voice and its regulatory authority to show its profound respect for the life within the woman”;[18]
8. The “undue burden” test does not prohibit laws that have a valid purpose but an “incidental effect of making [abortion] more difficult or expensive to procure,” [19] and the woman seeking to abort even a previability fetus is not constitutionally entitled to do so completely free of interference from the state, but any state interference cannot be “undue.”[20] '
Our circuit law is to similar effect, of course.[21]
Arizona has unquestionably put a “substantial obstacle” in the path of a woman seeking to abort a previability fetus. Unless she has a “medical emergency,” no one can perform it on her. True, she might be able to go to another state for it, but I am unaware of any case in which one state may deprive someone of a constitutional right because the individual could exercise it in another state. And aborting previability fetuses is, under the current state of the law, a constitutional right. True, the state has a legitimate interest in protecting the fetus from pain. Although plaintiffs’ amici claim that a previability fetus feels no pain, the state’s experts’ affidavits claim that it does, and legislatures have “wide discretion to pass legislation in areas where there is medical and scientific uncertainty.”[22] But protection of the fetus from pain, even the pain of having a doctor stick scissors in the back of its head and then having the doctor “open[] up the scissors [and stick in] a high-powered suction tube into the opening, and suck[ ] the baby’s brains out” was not enough in Gonzales to justify a complete prohibition.[23]
*1235 As for Arizona’s claimed interest in the mother’s health, people are free to do many things risky to their health, such as surgery to improve their quality of life but unnecessary to preserve life. There appears to be no authority for making an exception to this general liberty regarding one’s own health for abortion.
I have alluded to administration of the death penalty to convicts because in one respect it is analogous. Many people have very substantial moral, philosophical, practical, and religious objections to one or both. Of course the analogy is limited, because convicts sentenced to death have committed horrendous crimes, but fetuses have committed no crimes. But the analogy applies to the extent that regardless of the objections we may have, a lower court is bound to apply Supreme Court authority, which allows executions and requires states to permit abortions. And under the authority by which we, and the state legislatures, are bound, the Arizona prohibition is unconstitutional.

. See, e.g., Dickens v. Brewer, 631 F.3d 1139, 1142 (9th Cir.2011) ("Arizona uses a three- *1232 drug lethal injection cocktail that consists of three chemicals- — sodium thiopental, pancuro-nium bromide and potassium chloride- — administered sequentially. Sodium thiopental is a fast-acting barbiturate that anesthetizes the inmate and permits the other chemicals to be administered without causing pain.”).

. Gonzales v. Carhart, 550 U.S. 124, 164, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007).

. Id. at 153, 127 S.Ct. 1610 (quotations omitted).

. Ariz.Rev.Stat. § 36-2301.01(C)(2).

. Gonzales, 550 U.S. at 161, 127 S.Ct. 1610 (quotations omitted).

. Id. at 167, 127 S.Ct. 1610 (quoting Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 514, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990)). The Court in Gonzales notes, but does not resolve, the tension between the "no set of facts” standard in Akron and the "large fraction of the cases” standard in Planned Parenthood v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

. Planned. Parenthood v. Casey, 505 U.S. 833, 860, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).

. Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

. Casey, 505 U.S. at 860, 112 S.Ct. 2791.

. Casey, 505 U.S. 833, 112 S.Ct. 2791.

. U.S. v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000) (“We do not treat considered dicta from the Supreme Court lightly. Rather, we accord it appropriate deference .... Supreme Court dicta have a weight that is greater than ordinary judicial dicta as prophecy of what that Court might hold; accordingly, we do not blandly shrug them off because they were not a holding.”) (quotations omitted).

.Gonzales, 550 U.S. at 145, 127 S.Ct. 1610.

. Id. (quotations omitted).

. Id.

. Id. at 146, 127 S.Ct. 1610.

. Id. (quotations omitted).

. Id.

. Id. at 157, 127 S.Ct. 1610.

. Id. at 158, 127 S.Ct. 1610 (quotations omitted).

. Id. at 145, 127 S.Ct. 1610 (quotations omitted).

. See McCormack v. Hiedeman, 694 F.3d 1004 (9th Cir.2012); Planned Parenthood of Idaho, Inc. v. Wasden, 376 F.3d 908 (9th Cir.2004).

. Gonzales, 550 U.S. at 163, 127 S.Ct. 1610.

. Id. at 139, 127 S.Ct. 1610.